ELEANOR L. SCHLAFLY and JOHN F. SCHLAFLY, Her Husband, ALBERT J. DAVIS, RHODES E. CAVE and WALTER H. PETRING, as Trustees, v. WILLIAM F. BAUMANN, Collector of the Revenue in and for the City of St. Louis, Appellant.—108 S. W. (2d) 363.

Division Two, August 26, 1937.

*James A. Waechter* and *Roberts P. Elam* for appellant.

*John B. Denvir, Jr., Thompson, Mitchell, Thompson & Young* and *Bryan, Williams, Cave & McPheeters* for respondents.

758

*Jones, Hocker, Gladney & Grand* for St. Louis Real Estate Exchange.

*John C. Meredith, amicus curiae,* for Real Estate Board of Kansas City.

*Sullivan, Reeder & Finley, amici curiae,* for Missouri Municipal Association.

BOHLING, C.—This appeal involves the validity of a proposed sale of real estate for delinquent taxes under the Jones-Munger Act [Laws 1933, pp. 425-449, Mo. Stat. Ann. (Supp.), p. 7980], as amended [Laws 1933, Ex. Sess., p. 154, sec. 9961].

I.   The first assignment of appellant, William F. Baumann, collector of revenue in and for the city of St. Louis, is that the court erred in holding a publication on December 28, 1934, January 4 and 11, 1935, of a notice to sell, on April 8, 1935, Lot 24 of Bell Place, a subdivision of the city of St. Louis, to discharge the lien

for delinquent taxes, was null and void and that a sale thereunder would not convey a marketable title.

The Jones-Munger Act provides that real estate "on which taxes are delinquent . . . shall be subject to sale to discharge the lien for said delinquent . . . taxes as provided for in this act on the first Monday of November of each year. . . ." [Laws 1933, p. 430, sec. 9952a; Mo. Stat. Ann. (Supp.), p. 7993.] Appellant says this section does not direct a sale on the "first Monday of November." However, it subjects the real estate to sale "as provided for in this act;" and Laws 1933, p. 430, sec. 9952b; Mo. Stat. Ann. (Supp.), p. 7995, specifically provides: "The . . . collector shall cause a copy of such lists of delinquent lands and lots to be printed in some newspaper of general circulation . . . for three consecutive weeks, one insertion weekly, before such sale, the last insertion to be at least fifteen days prior to the first Monday in November. . . . To such list shall be attached and in like manner so printed and published a notice that so much of said lands and lots as may be necessary to discharge the taxes . . . due thereon at the time of sale *will be sold* at public auction at the court-house door . . . *on the first Monday in November next thereafter*, commencing at ten o'clock of said day and continuing from day to day thereafter until all are offered." (Italics ours.) Appellant admits the questioned publication did not comply strictly with said statute, but says such advertisement and the proposed sale were not wholly null and void; because: (a) the proceeding was valid under other statutes; and (b) the provisions of said Section 9952b are directory and not mandatory.

(a) Section 9961, Revised Statutes 1929, established a five-year limitation period for the institution of actions for the recovery of taxes against real estate; and was repealed and reenacted at the Extra Session of the General Assembly in 1933. Appellant says said proposed sale of April 8, 1935, and the notice thereof were entirely valid, being in strict compliance with the provisions of said reenacted section which, after providing that no proceedings for the sale of real estate for delinquent taxes shall be valid unless initial proceedings be commenced within five years after delinquency, read: ". . . and any sale held pursuant to initial proceedings commenced within such period of five (5) years shall be deemed to have been in compliance with the provisions of said act insofar as the time at which such sales are to be had is specified therein, *provided* that proceedings for the sale of lands and lots on which taxes are delinquent for the year 1928 may be commenced at any time prior to December 31, 1934. . . ." [Laws 1933, Ex. Sess., p. 154.] If, as appellant contends, respondents overlook applicable statutory provisions, appellant's contention ignores the title of said repealing

and reenacting act, the Governor's message with reference thereto, and certain provisions of the constitution of our state. Insofar as here involved, they are:

The legislative power, subject to the limitations set forth in the Missouri Constitution, is vested in the General Assembly [Mo. Const., Art. 4, Sec. 1; 15 Mo. Stat. Ann., p. 416.] "The General Assembly shall have no power, when convened in extra session by the Governor, to act upon subjects other than those specially designated in the proclamation by which the session is called, or recommended by special message to its consideration by the Governor after it shall have been convened" [respectively, Id., Sec. 55, p. 511]; and the Governor "on extraordinary occasions . . . may convene the General Assembly by proclamation, wherein he shall state specifically each matter concerning which the action of that body is deemed necessary" [Mo. Const., Art. 5, Sec. 9; 15 Mo. Stat. Ann., p. 528]. "No bill . . . shall contain more than one subject, which shall be clearly expressed in its title" [Mo. Const., Art. 4, Sec. 28; 15 Mo. Stat. Ann., p. 437].

Said Extra Session of said General Assembly was authorized to enact legislation, among other subjects, concerning: "(C) An Act to repeal Section 9961 of Article 9, Chapter 59 of the Revised Statutes of Missouri, 1929, relating to limitation of actions in connection with delinquent and back taxes, and to enact a new section in lieu thereof, to be known as Section 9961, relating to limitation of sales for delinquent taxes and validity thereof." [Governor's Special Message; 1933 Ex. Sess., Senate Journal, pp. 165, 166.]

"An act to repeal Section 9961 . . . and to enact a new section in lieu thereof . . . providing a limitation period for instituting initial proceedings for sale of . . . lots for delinquent and back taxes. . . ." [Title, Laws 1933, Ex. Sess., p. 154.]

It is at once evident that the title to the repealing and reenacting act of said Section 9961 contains no reference to any provision effecting a change in the sale date prescribed by said Jones-Munger Act; and that any such attempted change would have been without, not within, the authority conferred upon said Extra Session of the General Assembly by the special message of Governor Park; and to construe said provision of said act as contended for by appellant would cause the same to contravene constitutional provisions. Construing said Section 9961 as a Statute of Limitation, as from the foregoing it must and from its title and text it should be construed, causes it to be ineffective to change the sale date from "the first Monday in November next thereafter" established by the Jones-Munger Act.

(b) Appellant, however, contends the provisions of the Jones-Munger Act that such lands "shall be subject to sale . . . on the first Monday of November of each year" [Sec. 9952a, supra];

that a notice shall be published that such lands "will be sold . . . on the first Monday in November next thereafter . . ." [Sec. 9952b, supra]; and that "on the day mentioned in the notice, the county collector shall commence the sale of such lands" [Sec. 9952c, supra] are directory and not mandatory. This may be true as to the quoted provision of Section 9952a, but to so hold would delete the provisions of Section 9952b calling for a sale on the first Monday in November next thereafter and Section 9952c requiring the county collector to commence the sale on the day mentioned in the notice, to-wit, said first Monday in November.

The cases [Mead v. Jasper County, 322 Mo. 1191, 1195, 18 S. W. (2d) 464, 465 (1); State ex inf. v. Lamar, 316 Mo. 721, 725 (I), 291 S. W. 457, 458 (1, 2); St. Louis County Court v. Sparks, 10 Mo. 117, 121, 122, 45 Am. Dec. 355] relied on by appellant are not controlling on the instant issue; because, among other reasons, they did not involve a matter wherein the time specified for the exercise of official action was or properly could be considered of the essence of its performance. The general rule and its limitations, likewise recognized in the cited cases, are stated in 59 Corpus Juris 1078, section 634: "A statute specifying a time within which a public officer is to perform an official act regarding the rights and duties of others, and made with a view to the proper, orderly, and prompt conduct of business, is usually directory, unless the phraseology of the statute, or the nature of the act to be performed and the consequences of doing or failing to do it at such time, is such that the designation of time must be considered a limitation on the power of the officer."

Exercise of the official action here involved is in derogation of private rights of property, disturbs vested rights therein, and deprives persons of their ownership of property; and this, under the Jones-Munger Act, by *ex parte* proceedings of a rather drastic and summary nature, based upon constructive notice. The provision for sale on the "first Monday in November" is for the benefit, protection and security of landowners, and not for the convenience of officials or the dispatch of their official duties. Due diligence on such date should avail landowners of information concerning any proceedings against their real estate for the collection of delinquent taxes. Statutory provisions prescribing the time and place of tax sales have been strictly construed in favor of the taxpayer and strict compliance therewith rigorously exacted. The maxim of *"expressio unius est exclusio alterius"* is especially apropos [Keane v. Strodtman, 323 Mo. 161, 167 (II), 18 S. W. (2d) 896, 898(2)]. In the instant case we need only rule that the notice and proposed sale are null and void because not in substantial compliance with the Jones-Munger Act—a ruling well within the foregoing observations and the cases

relied upon by respondents: Meriwether v. Overly, 228 Mo. 218, 239, 129 S. W. 1, 8; Lagroue v. Rains, 48 Mo. 536, 538; Large v. Fisher, 49 Mo. 308, 309. See, also, Sullivan v. Donnell, 90 Mo. 278, 283, 2 S. W. 264, 266 (stating, considering certain Kansas City charter provisions: "While the sale may be continued from day to day, he must, at least, begin on that day, the day for which the notice of sale is given, and, if not begun then the power to sell becomes *functus officio*"); 16 Corpus Juris, page 1190, section 1603, page 1117, section 1519. Stating the Jones-Munger Act effected a radical change in the method of foreclosing the State's lien for delinquent taxes by suit in a court of competent jurisdiction, State ex rel. Karbe v. Bader, 336 Mo. 259, 265, 78 S. W. (2d) 835, 837, continues: "It expressly repealed numerous sections of the former statute . . . and substituted a scheme for foreclosure by sale by the collector at the courthouse door on the first Monday [in November] in each year, upon published notice thereof, and without resort to judicial proceedings. . . ." The omission of the words "in November" in the Karbe case was an obvious inadvertence, likely occurring in the transcription of the notes. Although the observations might not have been essential to the precise ruling there made, they indicate the view of one learned in the law and are of value on the instant issue.

II. Lot 24 aforesaid is located in a residential area subject to restrictions created by deed, said restrictions covering, in part, the cost and type of construction of residences to be erected therein. The cause was continued *nisi* from time to time and, the taxes remaining unpaid, on September 30, October 7 and 14, 1935, appellant again published notice to sell said lot on November 4, 1935. The court restrained appellant from selling said lot at said proposed sale free and clear of said restrictions, and appellant contends the court erred in not permitting a sale free and clear of said restrictions.

Appellant admits there are two distinct lines of authority. The annotator in 40 A. L. R. 1523, states: ". . . The solution of this question should depend upon the nature of the tax levy. If the tax is levied upon the real estate without regard to the various interests that may have been carved out of it, then in principle a sale of the land for taxes should pass a fee simple to the purchaser relieved of all easements. If, on the other hand, the tax is levied merely on the servient estate, then a sale of the land for taxes should pass merely the servient estate; that is, the land subject to the easement. The better considered cases adhere to this theory. Others, however, do not consider the nature of the tax levy, but deny that the easement is extinguished solely on the ground that the person taxed had no title to the easement, and, therefore, the sale could not pass title

thereto. This theory, of course, makes the tax an assessment against the particular estate rather than against the land itself. The question is affected in some cases by statute.''

Appellant stresses Nedderman v. Des Moines (Iowa), 268 N. W. 36(2); Alamogordo Imp. Co. v. Hennessee, 40 N. M. 162(1-3), 56 Pac. (2d) 1127(1-3); Re Hunt and Bell, 34 Ont. L. R. 256, 263, 24 D. L. R. 590, 592; Hill v. Williams, 104 Md. 595, 604, 65 Atl. 413, 414; Hansen v. Carr, 66 Wash. 81, 83, 118 Pac. 927(1); and Tamblin v. Crowley, 99 Wash. 139, 140, 168 Pac. 982, 985.

Respondents rely on Jackson v. Smith, 153 App. Div. 724, 726, 138 N. Y. Supp. 654, 656(4); Tax Lien Co. v. Schultze, 213 N. Y. 9, 11, 106 N. E. 751, 752(1, 2), L. R. A. 1915D, 1115, 1117, Ann. Cas. 1916C, 636, 637, and annotation 638; Crawford v. Senosky, 128 Ore. 229, 232, 274 Pac. 306(3); Tide-Water Pipe Co. v. Bell, 280 Pa. 104, 111, 124 Atl. 351(9), 40 A. L. R. 1516, 1521; and State ex rel. Koeln v. West Cabanne Imp. Co., 278 Mo. 310, 322, 323, 213 Mo. 25, 27, 28.

The West Cabanne Imp. Co. case is to the effect that one who has a dominant easement of way, created by plat and deeds, appertaining to his lot in private streets and ways of a subdivision pays the tax chargeable on said easement in said private streets and ways upon paying the tax assessed and charged on his lot; and any attempt to charge a further tax on such easement subjects the easement to double taxation and is unenforceable. The court said: ''. . . an easement appurtenant can have no existence other than in connection with the land to which it pertains, nor can its value find other expression than in the value of the dominant tenement which it serves. . . . In cases like the present the mutual easements are created for the very purpose of increasing the taxable value of the entire tract. It is by such development that a large percentage of the aggregate taxable value of the state is created, and a revenue system which should disregard the permanence and safety of such conditions would be highly detrimental to the interest of the people.'' And, further: ''. . . the appellant, in paying the tax assessed and charged upon his lot, also paid the tax chargeable upon his easement in West Cabanne court, and . . . any attempt to charge a further tax upon that easement by the proceedings to which this suit is an incident is, in law, an attempt to subject it to double taxation, and cannot, therefore, be enforced by the court. . . . The easement continued to be attached to the tenement in which it was planted, and cannot be uprooted by the court in this suit. . . .''

But appellant says the West Cabanne Imp. Co. case was based entirely upon an interpretation of Section 9977, Revised Statutes 1929 (then Sec. 11519, R. S. 1909), defining ''real property,'' etc., as including the land, things therein, buildings, etc., thereon, ''and all

rights and privileges belonging or in anywise pertaining thereto, except where the same may be otherwise denominated by this chapter;'' without considering the following statutory provisions:

''The assessor shall value and assess all the property on the assessor's books according to its true value in money at the time of the assessment. . . . Each tract of land and town lot shall be assessed and valued separately. . . .'' [Sec. 9792, R. S. 1929; Mo. Stat. Ann., p. 7898.]

''Each tract of land or lot shall be chargeable with its own taxes, no matter who is the owner, nor in whose name it is or was assessed. The assessment of land or lots . . . shall be deemed and taken . . . to impart notice to the owner or owners thereof, whoever or whatever they may be, that it is assessed and liable to be sold for taxes, interest and costs chargeable thereon. . . .'' [Sec. 9793, R. S. 1929; Mo. Stat. Ann., p. 7900.]

Assume, as appellant contends, that under said statutory provisions it is the tract of land or lot that is assessed, that is, the ownership of all interests (not merely the interest of the taxpayer) therein, and that easements and restrictive covenants constitute types of private interests which may be owned in land and assessed along with all other interests, it does not necessarily follow that the court erred in restraining a sale of the lot free and clear of said restrictions. The restrictions under consideration differ somewhat from an easement as that term is generally understood (see Wooldridge v. Smith, 243 Mo. 190, 203, 147 S. W. 1019, 1023; 19 C. J. 864; and consult Bolin v. Tryol Inv. Co., 273 Mo. 257, 261, 200 S. W. 1059(1), L. R. A. 1918C, 869, 871; Re Hunt and Bell, 34 Ont. L. R. 256, 262, 24 D. L. R. 590, 591; Pierce v. Harper, 311 Mo. 301, 278 S. W. 410; Sumrall v. Maninni, 124 Ky. 67, 71, 98 S. W. 301, 302]; and from interests in real property which have no effect upon the value thereof as real estate, such as dower, curtesy, liens created by deeds of trust, etc. In either event, under the assumption, the delinquent tax has its foundation in the assessment. [State ex rel. Koeln v. Lesser, 237 Mo. 310, 318, 141 S. W. 888, 889].

It stands uncontradicted of record that the value of the individual lots within the restricted area were enhanced by reason of said restrictions; that real estate values within restricted residential areas are highly sensitive to any removal of the restrictions and construction of improvements detrimental to the value of the surrounding property for residential purposes; that the sale of the lot here involved free and clear of restrictions would have a depreciating effect upon the value of the real estate within said restricted area and that if the lot subsequently be devoted to a commercial use, real estate values within the restricted area would be materially decreased by reason thereof and any such decrease would be reflected in the assessment for purposes of taxation and the taxes collected.

Mindful that the power of taxation is an essential and inherent attribute of sovereignty, it would be a myopic public and financial policy for the State to blow cold on the value of a lot at the tax sale while blowing hot on its assessed value in arriving at the amount of the delinquent taxes for which the lot is being sold where, as in the instant case, it is established that the delinquent taxes involved were computed upon an assessed value of Lot 24 including the added increment of value accruing by reason of. the restrictions and that a removal of said restrictions on the lot will result in a decrease in the value of real estate within said restricted area to the financial loss of the taxpaying citizens therein and a resultant loss in revenue to the State.

No paramount right of the State is adversely involved under the facts of the instant case; and we conclude, under such circumstances, that the provisions of Section 9957, Revised Statutes 1929, as amended by Laws 1933, p. 438, Mo. Stat. Ann. (Supp.), p. 8002, that ". . . the collector . . . shall execute to the purchaser, . . . in the name of the state, a conveyance of the real estate so sold, which shall vest in the grantee an absolute estate in fee simple . . .;" and Laws 1933, p. 438, Sec. 9957a; Mo. Stat. Ann. (Supp.), p. 8002, that ". . . such deed shall be . . . prima facie evidence of a good and valid title in fee simple in the grantee of said deed . . .;" and prescribing a form of deed reading, in part, "to have and to hold the said . . . tract or parcel of land, . . . to the said party of the second part, . . . in as full and ample a manner as the collector of said county is empowered by law to sell the same;" refer to that fee simple title reflected in the value assessed against said real estate and the taxes arising therefrom; and that our General Assembly has not undertaken, intentionally or unintentionally and unnecessarily, to decrease the value of the realty holdings of citizens by destroying restrictions on the use of real estate mutually beneficial to individual citizens in increasing the value of such holdings and the State in increasing its revenue from taxation. Such construction gives life to reason, right and justice, accords recognition to the basic factor of all general property taxes when not infringing upon any paramount right of the State, and does not lead to unreasonable and absurd results. So, whether we consider the ruling in the West Cabanne Imp. Co. case, supra, controlling here or the issue to turn on appellant's construction of the quoted provisions of Sections 9972 and 9973, supra, the result is the same.

Having thus disposed of the issue, we deem it unnecessary to discuss other statutory provisions urged upon our consideration by respondents.

The judgment is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.