**91 P.2d 428**

## ALAMOGORDO IMPROVEMENT CO. v. PRENDERGAST.

### No. 4426.

Supreme Court of New Mexico.

May 25, 1939.

Shipley & Shipley, of Alamogordo, for appellant.

W. C. Whatley, of Las Cruces, and C. V. Clayton, of Tularosa, for appellee.

MABRY, Justice.

This is an appeal from a judgment in favor of defendant below, C. A. Prendergast, and involves the question of the effect of forfeiture to the state and a sale for taxes of a certain lot in the original townsite of Alamogordo upon a reciprocal negative easement. The easement claimed by the townsite company arises by virtue of certain covenants in the deed from said townsite company conveying the lot in question, and is found as well, in deeds to all other lots in that part of the townsite, all of which deeds contained a uniform clause and provision against the sale of intoxicating liquors in the restricted area.

That is to say, the question here presented is whether under the circumstances of the case as hereinafter more fully set out, such restrictive clause against the sale of liquor survives and may be enforced against a purchaser from the state after a forfeiture and sale for delinquent taxes, in view of the fact that under our statute a tax deed from the state conveys the property not by a "derivative" title, but by "a new and paramount title in fee simple absolute, created by an independent grant from the sovereign, striking down all previous titles and interest in the property." Alamogordo Improvement Co. v. Hennessee, 40 N.M. 162, 56 P.2d 1127, 1129.

For convenience we refer to the parties as they were designated in the trial court, the townsite company as plaintiff, and Prendergast as defendant.

It was upon defendant's demurrer to plaintiff's first amended complaint that the issue was decided. The demurrer was sustained and plaintiff appeals.

The complaint to which the demurrer was directed in substance contained the following allegations: Plaintiff townsite company had organized for the purpose and was engaged since 1898 in the business of promoting and developing the townsite upon which now stands the town of Alamogordo, plaintiff being at the time owner in fee simple of all the lands platted and thereafter sold, including the lot in question; lots were platted and sold for both business and residential purposes; that the plaintiff, acting through its board of trustees, in the establishment of the town of Alamogordo, deemed it advantageous to the development of the town and to the best interests of its inhabitants, to restrict the manufacture, sale or other disposition of intoxicating liquors in said town to a certain area described as Block 50 thereof.

That, in furtherance of this decision, they adopted a general scheme or plan in the sale of its lots and plats of land, calculated to limit the manufacture, sale and other disposition of intoxicating liquors to said one block; that to this end there was inserted by plaintiff in each and every contract for sale and deed to land disposed of by it within said platted area, a covenant whereby the purchaser, as a part of the consideration, agreed for himself, his heirs

and successors that intoxicating liquors would never be sold or otherwise disposed of as beverage in any place of public resort in or upon said premises; that this general scheme and plan of the townsite promoters was for the purpose of making the proposed town a desirable residence town, free from the unrestricted sale of intoxicating liquors. There is the further allegation that such scheme and plan was intended to and did in fact, enhance the value of the lots so sold, as well as those retained by the plaintiff.

It is then alleged that in the year 1905 plaintiff sold and conveyed lot 12 of block 12 of said town, which was one of the lots within the restricted area, conveying title by warranty deed containing the usual covenant and restriction against the sale of intoxicating liquors on said premises, and that this deed was duly and regularly recorded, and gave notice to all. That thereafter there were other sales and transfers but that all deeds carried the liquor restriction and all were in due course placed of record.

That defendant Prendergast purchased the lot in question at tax sale, securing first a certificate and then after expiration of redemption period, a tax deed was executed by the county treasurer as required by law; that defendant since then has been and now is the owner of the lot, and that he acquired the same with full knowledge of the general plan and scheme for restricting the sale and disposition of intoxicating liquors in said town and on the lot in question; that defendant has erected a building upon the lot for the purpose of selling, and now threatens to sell upon the lot, as a place of public resort, intoxicating liquors for beverage purposes; and that unless he be by the court restrained, he will do so. Plaintiff then prays for the ordinary equitable relief of injunction, after alleging such conduct would result in continuing damage, and would violate the property rights of plaintiff and others likewise situated in said area.

The deed likewise contained a clause and covenant providing that the title should revert to the original vendors of the property conveyed, in the event the liquor clause be violated. We had this phase of the covenant under consideration in the Hennessee case, supra. It is, however, not involved here.

It is clear from the record and briefs of counsel that there is here presented for review the one question of law, which is, adopting the language from appellant's brief in chief: "Where an area has been platted under a general plan of development under which reasonable building or use restrictions have been imposed by the common vendor upon all the property within such area, and for the benefit of all the property within the area, and where such restrictions have entered into the consideration for every lot sold within said area, does the valid sale of one lot for taxes to a purchaser, with full notice of the restrictions and of the general plan of development under which they are imposed, operate to divest said common vendor and

other owners of lots within said area of their equitable right to the enforcement of such restrictions as against such purchaser and as to such lot?"

Defendant claims and ably urges that in view of the character of title which passes under a tax sale, such right of negative easement and covenant of restriction in this respect, like any other right, interest, or lien in, to or upon the property so sold, is struck down by virtue of the superior force of the new title emanating from the sovereign as a new and paramount title, and relies principally upon the authority of Alamogordo Improvement Co. v. Hennessee, supra, in support of his position.

It becomes necessary to examine somewhat into the character of right claimed by plaintiff by virtue of this building and use scheme and plan adopted. For its protection, if there be any, we must look to the language of the deed covenant and the allegations of the complaint to which the demurrer was directed. It would probably not be questioned by defendant (though as much is not directly conceded by him), were it the rule in this state that a sale of property for taxes passed merely a "derivative" as distinguished from a "new and paramount" title, that easements of all kinds are preserved and survive such sale.

The Hennessee case is held up to us as an inescapable obstacle to surmount before plaintiff can prevail. We have no desire to and will not disturb the rule there laid down in arriving at a determination of the issues here involved. The Hennessee case involved a different question. It had to do with the right of reversion of title for violation of a use covenant and restriction which, incidently, was however, the very same form of covenant which we now have under consideration. This court in that case held that in view of the character of title which under our tax statutes passed upon forfeiture of property to the state, the right of reversion of title to land in event the restrictive covenant against sale of liquors be violated, was wiped out by forfeiture to state and sale for taxes of the property burdened with this conditional subsequent interest and right. That case decided nothing more, and the question of whether a violation of such a clause against sale or disposition of liquors by a purchaser from the state at a tax sale could be reached through equitable relief was, of course, not involved.

Plaintiff urges that each and every property owner in the platted area which is burdened with the common restriction, has a property right or interest which equity will protect, in seeing that the common restriction imposed for the benefit of all, and which is reflected in the increased value for which each lot was, theoretically at least, assessed, is uniformly observed by all who purchased with notice, whether from the state or otherwise.

It may be said that generally, all easements or rights which are subject to separate valuation for assessment purposes, and which have been carved out of the servient estate, since they are, theoretically at least, taxed as a part of the domi-

nant estate, remain inviolate upon sale of the servient estate. This we hold, is the majority rule even though the state, as purchaser under tax sale, and thereafter vendor to individuals, does in fact, give by its deed a "new and paramount" title. See Annotations 40 A.L.R. 1523, 110 A.L.R. 612; Jackson v. Smith, 153 App.Div. 724, 138 N.Y.S. 654; Id., 213 N.Y. 630, 107 N.E. 1079.

This would undoubtedly be true if it were a question of easement of right-of-way, or of light and air. It also applies as to ordinary building restrictions.

The leading case upon the effect of a tax sale upon a negative easement is perhaps Tax Lien Co. v. Schultze et al., 213 N.Y. 9, 106 N.E. 751, 752, L.R.A.1915D, 1115, Ann.Cas.1916C, 636. In that case the court said: "When an easement is carved out of one property for the benefit of another, the market value of the servient estate is thereby lessened, and that of the dominant increased, practically by just the value of the easement; the respective tenements should therefore be assessed accordingly."

The court, in the Jackson case, supra, was dealing with a negative easement of light and air, and it went on to say, in distinguishing this from other and conventional rights or interests in land which are ordinarily wiped out by sale for taxes, where the new and paramount title theory is followed [138 N.Y.S. 656]:

"An easement is a servitude upon, and differs from an interest in, or lien upon, the land. It is not a part of, but so much carved out of the estate in, the land, and is as much a thing apart from that estate as a parcel of the land itself conveyed from it.

"If the principle contended for by the respondents is sound, the owner of the dominant estate, who pays taxes upon a valuation which includes the value of his easements, must also, to protect his easements, pay taxes assessed upon another's property, although the value of the easements is necessarily excluded from the assessed valuation thereof."

The court, in the case of Crawford v. Senosky et al., 128 Or. 229, 274 P. 306, cites, with approval, the Schultze case, and further adds that clearly it would be taking property without due process of law to permit the sale of property excluded from the assessment because a part of the dominant estate, and for that very reason a factor in valuing for assessment purposes the estate enjoying the easement.

The Oregon statute provides that tax deeds "shall vest in the purchaser title in fee thereto, and such title shall be superior to any lien, claim or charge whatever against such lands, except the lien of tax certificate of delinquency issued to an individual, subsequent to that for which the land was sold, and the taxes for the current year." Or.L. § 4371, Crawford v. Senosky et al., supra.

The New Mexico statute, under which the land in question was sold, describes the title passing by tax deed as being a perfect and complete title in fee simple, "free and clear of all liens and encumbrances

except taxes levied thereon prior or subsequent to the year for which the same was sold." Sec. 27, Chap. 102, Laws 1925.

"Tax sale of servient tenement and foreclosure of certificate of sale does not extinguish right of way appurtenant to adjoining property."—Ehren Realty Co. v. Magna Charta Building & Loan Association of Newark et al., 120 N.J.Eq. 136, 184 A. 203.

The New Jersey court in the above case, adheres to the reasoning adopted by the great weight of authority which is to the effect that the easement is carved out of the servient estate and the "market value of the servient estate is thereby lessened."

In passing upon a question involving an easement of right-of-way, the court in the recent case of Metropolitan Life Insurance v. McGurk, 193 A. 696, 15 N.J. Misc. 572, though conceding that the purchaser acquires "a new and complete title from the sovereign authority," says: "A tax title clothes the purchaser with a new and complete title, but the tax title is established upon the assessment, and in the quantity and character of property conveyed the tax sale embraces nothing more or different than did the basic assessment, so that an easement which is not assessed as a part of the servient tenement is not extinguished by a sale of the servient tenement for taxes."

A tax title may be said to be in the nature of a new and independent grant from the sovereign authority (Hefner v. Northwestern Mutual Life Ins. Co., 123 U. S. 747, 8 S.Ct. 337, 31 L.Ed. 309); "a new and paramount title in fee simple absolute, created by an independent grant from the sovereign, striking down all previous titles and interests in the property" (Alamogordo Improvement Co. v. Hennessee, 40 N.M. 162, 56 P.2d 1127, 1129). Nevertheless the tax title is established upon the assessment, and "the assessment is the basis of it." See Jackson v. Smith, supra.

"Ordinarily a tax sale does not divest easements charged upon the property sold." Vol. 3, Cooley on Taxation, 4th Ed., Par. 1494.

The recently decided case of Northwestern Improvement Co. v. Lowry, 104 Mont. 289, 66 P.2d 792, 794, 110 A.L.R. 605, deals with a case quite like the one at bar. The authorities are thoroughly reviewed and the Hennessee case, supra, is distinguished as having to do only with reversion of title after tax sale where covenant is broken, and shows there was no such question involved as is found in the case then under discussion by that court, which is the question now before us.

The Montana statute provides that a tax deed conveys: "Absolute title, * * * free and clear of all incumbrances, except the lien for taxes which may have attached subsequent to the sale." Sec. 2215, Rev. Codes 1921.

In Northwestern Improvement Co. case, supra, in almost the identical language used by us in the Hennessee case, the court holds that under the Montana statute "the tax deed mentioned is not derivative, but creates a new title in the nature of an independent grant from the sovereignty, ex-

tinguishing all former titles and liens not expressly exempted from its operation." In addition, it holds that the reciprocal negative easement against sale of liquor in the area was a property right which was properly assessable as a part of the dominant estate, and did not pass with forfeiture to state and sale for taxes. The court there quoted with approval from Jackson v. Smith, 153 App.Div. 724, 138 N.Y.S. 654, and from the Schultze case, supra, saying that: "An easement is a servitude upon, and differs from an interest in, or a lien upon, the land." And it further points out that assessments upon which the sale for delinquencies are based are made upon the theory of a deduction from the servient estate for easements, whereas none are made for liens and like interests.

It may be said that this theory makes the tax an assessment against the particular estate rather than against the land itself. Some courts so explain it. See Annotation in 40 A.L.R. 1523, supra. But, regardless of the theory upon which it is based, the courts generally find no difficulty in saving these valuable servitudes to the dominant estate after sale for taxes of the servient estate, upon the theory that they have been, for tax purposes, carved out of the servient estate, and, if taxed at all, must have been taxed as an added value to the freehold of the dominant interest.

██ Our assessment statute requires assessment of all property, at its "full market value." Sec. 141-203, Comp.Laws 1929. Sec. 141-101 makes all property subject to taxation. It will be presumed that the assessor and other taxing authorities did their duty (Jackson v. Smith, supra), and that they assessed all (emphasis ours) property, and that they were able to and did fix the value on lots in this restricted area, not alone from a corporeal appraisement, but, that the value of the restriction, this appurtenant, though incorporeal, value, influenced the valuation placed upon the dominant estate, the property of the plaintiff, and others similarly situated.

It is admitted here that all the lots in the platted area were increased in value by virtue of the restriction. So, we do not have presented the situation where the dominant estate enjoys an increase in value at the expense of the servient. There is a reciprocal benefit flowing out of the restriction which is implanted in each and every lot and which, under the pleadings, we hold to have increased the value of each and every lot. It is likewise to be assumed that these increased values as to each and every lot in the area are reflected in the assessed value upon which the tax payer of all lots paid his taxes, as heretofore pointed out.

Thus, the protesting taxpayer, relying upon the fact that he has through the years, paid taxes upon an enhanced value which the easement or restriction gave to his property, presents a most intriguing plea when he asks the court to protect his property right thus acquired and already taxed by the state.

Shall he be subjected to double taxation? Shall he thus suffer the destruction of his property rights upon which he has

regularly paid tax? Or, must we assume the state would be authorized by its tax legislation or that it intended, to destroy values and thus foolishly reduce the needed tax income from the property of its citizenry? To each of these queries we answer "No."

■ Defendant here in purchasing from the state, purchased not only a fee simple title "free and clear of all liens and encumbrances," but since his lot, like all others of the area, was likewise increased in value because of the restriction, and was likewise taxed upon this additional value, he secured something more than the ordinary or conventional fee simple title. He secured the right which the restriction gave to him and which attached to his lot, to prohibit the owner of any other lot in the area from violating the restriction, which theoretically is as valuable to him as to any other owner.

A situation somewhat like the one presented here was considered in the case of Schlafly et al. v. Baumann, etc., 341 Mo. 755, 108 S.W.2d 363, 368. It was there held that a building restriction intended to and which did increase the value of all lots of the area could not be wiped out through tax sale. The Missouri Court was there dealing with a statute like our own which gave not a "derivative" title by tax deed, but which vested in the grantee an "absolute estate in fee simple."

It was there pointed out that the easement or restriction could not be destroyed in such case, either because it would amount to double taxation (State ex rel. Koeln v. West Cabanne Imp. Co., 278 Mo. 310, 213 S.W. 25), or for the better reason that it cannot be assumed that the legislature intended to destroy or decrease the values of realty holdings of citizens by destroying such restrictions "mutually beneficial to individual citizens in increasing the value of such holdings and the state in increasing its revenue from taxation."

Encumbrance is defined in Ballentine's Law Dictionary as follows: "An encumbrance on land is a right in a third person in the land to the diminution of the value of the land, though consistent with the passing of the fee by the deed of conveyance."

Webster defines an encumbrance as "a burdensome or troublesome load."

"An encumbrance in a legal sense, is defined as an estate, interest or right in lands diminishing their value to the general owner." Thomson v. Locke, 66 Tex. 383, 1 S.W. 112, 114.

So understood, in applying our statute saying a tax deed conveys the title in fee simple, "free and clear of all liens and encumbrances" we find nothing inconsistent with the holding in Schlafly et al. v. Baumann, supra, which proceeds on the theory of a value added to the land.

■ Courts are always properly motivated by a deep anxiety to preserve property rights wherever threatened. The fact of preservation is important, the theory upon which it is done is incidental. Our legislature likewise, it will be presumed,

did not intend to destroy property values and thus reduce its tax income, even in its laudable endeavor to facilitate the collection of delinquent taxes.

■ Defendant in purchasing from the state the lot in question secured a something, a right, an interest, more than a fee simple title and this right and interest went with the lot sold for the reason that the lot had been taxed therefor, as an increment of value added to it. The purchaser may say "I do not want this added right and value which I purchased, and will have none of it." Then we answer, he is not of course, required to assume dominion over or himself exercise such right, but he cannot by affirmative action on his part destroy other and reciprocal rights involved therewith, and for which the state has already exacted of the other owners as the penalty of owning and exercising the right, added taxes for such increased value thus implanted in such holdings.

In the language of the court in Schlafly v. Baumann, supra, we say: "Such construction gives life to reason, right, and justice, accords recognition to the basic factor of all general property taxes when not infringing upon any paramount right of the state, and does not lead to unreasonable and absurd results."

Let us ponder the consequences that might result to upset any general plan of restriction as to character of building, the elevation of buildings, or their distance from front property line, as well as restriction as to use to which property might be put in any highly priced residential district, for example, if all such negative easements might be wiped out through sale of any part of the servient tenement for taxes.

We have, let us say, a restrictive covenant, otherwise called a negative easement, against the maintenance or operation of sanatoria or boarding houses for convalescents in a fine residential district of a city. Doubtless, purchasers of building sites in this area were influenced to pay a good price and build expensive homes by virtue of what they took to be a guarantee by the covenant in their deed against the neighborhood ever becoming a sanatorium or rooming house district. Now, must every owner of every lot and home in this section be required, at the peril of seeing his property values reduced or destroyed, to pay not only his own taxes upon his own property, but as well, to pay taxes upon that of his neighbor? Must such owner, at the peril of losing valuable property rights based on the restrictions invoked, see that such neighbor's taxes do not become in default and his land sold to an outsider who might, if he desires, and because he is not bound by the area's restriction, destroy property values by an act that has always been forbidden others? We think not.

Counsel for appellee urges consideration of the fact that our statute, unlike that of some states, makes no provision for the assessment of such, or other, easements. It is answer enough to that contention to

point to the requirement that *all* (emphasis ours) property shall be assessed according to the value thereof. It likewise seems reasonable to assume that property values are often fixed for tax paying as well as for sale purposes, with consideration for such negative easements as we have here. Theoretically, it is a simple thing to do. Actually, we know it must be done in many cases. In any event, the complaint here tested upon demurrer, alleges an increased value to the property in the area accruing by virtue of the uniform and long existing restriction against the operation of public resorts where liquor may be sold.

For the reasons stated the cause will be reversed with directions that the demurrer be overruled, and it is so ordered.

BICKLEY, C. J., and BRICE, ZINN, and SADLER, JJ., concur.