229 So.2d 834 (1969)
Porter W. HOMER, et al., Petitioners,
v.
DADELAND SHOPPING CENTER, INC., a Maryland Corporation Authorized to Do Business in the State of Florida, Respondent.
No. 38379.
Supreme Court of Florida.
December 10, 1969.
Rehearing Denied January 27, 1970.
Thomas C. Britton, County Atty., John G. Fletcher, Asst. County Atty., and Gerald T. Wetherington, Miami, for petitioners.
Sibley, Giblin, Levenson & Ward and Robert C. Ward, Miami Beach, for respondent.
ADKINS, Justice.
By petition for writ of certiorari, the petitioners seek a review of the decision of *835 the Third District Court of Appeal (217 So.2d 844) on the ground that it is in direct conflict with Wolfson v. Heins, 149 Fla. 499, 6 So.2d 858.
The petitioners were the appellants in the District Court of Appeal and will be referred to as the "Taxing Authorities." Respondent was the appellee in the District Court of Appeal and will be referred to as "Dadeland."
On January 1, 1966, Dadeland held fee simple title to all but 2.29 acres of land comprising a regional shopping center known as the Dadeland Shopping Center. Federated Department Stores, Inc., (hereafter referred to as Federated) owned the remaining 2.29 acres on which its Burdine's Department Store was located. In June of 1966, Dadeland conveyed an encumbered fee simple interest in 5.71 acres of land in the shopping center to Federated as part of an exchange transaction, so that Federated could build an addition to its Burdine's Store on part of the 5.71 acres of land.
The entire shopping center property, including the 2.29 acres owned by Federated and the 5.71 acres acquired by Federated in June, 1966, comprised approximately 71 acres of land. This land was assessed for 1966 taxes under several "folio numbers" used by the Taxing Authorities in assessing property.
The buildings and mall area of the shopping center were located in the center of a tract of land containing about 38 acres. This main tract will be referred to as "Tract 002."
Dadeland does not contest that part of the assessment covering the improvements in the main tract. The land in the main tract consisted of a building area which was valued at $1.90 per square foot, a parking area which was valued at $1.90 per square foot, and vacant land for future expansion which was valued at 75¢ a square foot. The assessed value of the land in the main tract was contested by Dadeland.
Another tract of vacant land, referred to herein as "004," was valued at 60¢ a square foot. This tract contained approximately 8.57 acres, and was to be used for future expansion. This assessed value is also contested. Another tract of vacant land containing 3.09 acres and referred to as "095" was valued at 75¢ a square foot, with the exception of 7,500 square feet. The land in 095 was also reserved for future expansion of the shopping center, and the assessed value is also contested.
Dadeland rented space in the shopping center to various tenants who received as part of the consideration for their rent the right to have their customers and employees use the parking area. Dadeland itself did not operate a retail business in the shopping center.
A timely suit was filed by Dadeland alleging that the 1966 ad valorem tax assessments on tracts 002, 004 and 095 were excessive and unlawful. An appropriate answer was filed by the Taxing Authorities and the cause came on for final hearing. A valuation witness for Dadeland opined that the parking area should be valued at about 33¢ a square foot. Another of Dadeland's experts testified that the shopping center land should be valued at 95¢ a square foot. The personnel of the Taxing Authorities who made the assessment were not called as witnesses. The Taxing Authorities in attempting to sustain their evaluation, presented the testimony of two members of the American Institute of Real Estate Appraisers. The trial judge found that the assessments for the tracts numbered 002, 095, and 004 were confiscatory, excessive, and void. The District Court of Appeal held that the shopping center agreements impressed the property with restrictive covenants and that the existence of such restrictive covenants detracted from the value of the property.
In Wolfson v. Heins, supra, plaintiff owned an easement right in a private street over adjoining property. An ad valorem tax assessment was made on the adjoining property, including the street. This tax *836 became delinquent and the property, including the private street, was sold at a tax sale. Plaintiff contended that the tax assessment did not include this easement in the property and therefore the tax sale did not divest them of their easement. This position was rejected by the Court in the following language:
"Although there is a division of authority on the question of whether the purchaser at a tax sale of land subject to an easement takes the land free from such easement, the difference in the cases seems based solely upon the nature of the tax levy and assessment. Where, as in this State, the levy and assessment is on the realty itself regardless of the existence of estates in it, an easement is destroyed by the tax sale of the servient estate."
The opinion of the District Court of Appeal in the case sub judice is based upon the theory that the encumbrances are "covenants restricting the use of land for purposes lower than its highest and best use." It was held that only the fee simple owner's interest in the real property was to be included in the tax assessment valuation and that the value of the rights held by third parties should be excluded from that valuation. The Taxing Authorities contend the rights of third parties in the real estate constitute an easement.
In order to determine the interest of the tenants in the parking area and other vacant land to be used for future expansion, it is necessary to understand the nature of the shoppping centers which have become an integral part of development housing in suburban areas. A shopping center is generally defined as a group of commercial establishments, planned, developed, owned and managed as a unit, with offstreet parking provided on the property (in direct relation to the building area), and related in location, size (gross floor area), type of shops to the trade area that the unit serves  generally in an outlying or suburban territory. See Powell on Real Property, Vol. 2, § 242(2), Encyclopedia of Real Estate Appraising by Friedman, Ch. 14, p. 281.
The leasing of space in shopping centers differs from the usual treatment of commercial property in that the shopping center concept denotes a unified complex of stores. Restrictive covenants in the nature of ancillary and reasonable restraints upon the nature of businesses to be operated in the center are required to induce investors to place a new venture in an untried area. The individual leases complement one another in order to foster the goal of multi-purpose or "one-stop" shopping. The shopping center was designed and operated as an economic whole and availability of adequate parking facilities for the customers is one of the big factors in attracting tenants. This is one of the rights the tenants receive for the rent which is paid.
Although the provision in a lease granting the tenant exclusive rights to conduct a particular type of business may be considered a restrictive covenant, the requirement of a "parking area" in other instruments relating to the shopping center created an easement.
An easement of way is essentially an inherently legal interest in land, as distinguished from a restriction resulting from a restrictive covenant, which is but a creature of equity arising out of contract. There is a distinction between general grants of easements of way and limited grants, as where the limitation is with reference to the purposes for which the easement may be used. See 2 Thompson on Real Property (1961) §§ 319 and 386; Leasehold Estates, Inc. v. Fulbro Holding Company, 47 N.J. Super. 534, 136 A.2d 423 (1957); Schlafly v. Baumann, 341 Mo. 755, 108 S.W.2d 363 (1937).
This Court in Board of Public Instruction of Dade County v. Town of Bay Harbor Islands, 81 So.2d 637 (Fla. 1955) held that building restrictions did not vest in owners of other lands in a subdivision a *837 property right for which compensation must be paid if such lots are taken for a public use inconsistent with the building restrictions. This Court in its opinion said:
"At the threshold we emphasize that the restrictions quoted above and with which we are concerned in this case do not fall within the category of true easements, such as the right of passage, use, or rights of light, air and view. See 18 Am.Jur., Eminent Domain, p. 786, Sections 156-158, especially Section 158. Easements such as these fall into a separate category from easements such as those we are dealing with in this case. These latter easements have been defined, and we think correctly, as negative easements or equitable servitudes. Such so-called easements are basically not easements in the strict sense of the word but are more properly classified as rights arising out of contract. It may well be that the failure of some of the courts to recognize this real difference has led to the confusion and the `irreconcilable conflict' in the decisions."
Dadeland and Federated entered into an exchange agreement in which Federated agreed to assign to Dadeland its interest in a 99-year lease covering almost all of the shopping property in exchange for a conveyance by Dadeland of an encumbered fee simple interest in 5.71 acres of land. In accordance with this agreement, Dadeland executed a special warranty deed conveying an encumbered fee simple interest in the 5.71 acres of land subject to various liens, easements and encumbrances, among which were the following:
"4. Easement and right-of-way over the west 35 feet of the east 845 feet of the southwest 1/4 of Section 35, Township 54 South, Range 40 East, granted to Federated Department Stores, Inc., by Kendall Center, Inc., dated May 24, 1960 and filed May 25, 1960 under Clerk's File No. 60R-94108.
"5. Easements and encumbrances arising out of a certain unrecorded operating agreement dated as of January 11, 1966, between Federated Department Stores, Inc., and Dadeland Shopping Center, Inc., a memorandum of said agreement having been filed for record with the Clerk of the Circuit Court, Dade County, Florida, under Clerk's File No. 66R-43736."
Dadeland obviously recognized the existence of an easement.
It is elementary that the tax assessment valuation must include all interests in the property except when the Legislature authorizes the assessment of separate interests. See Dickinson v. Davis, 224 So.2d 262 (Fla. 1969).
The effect of the decision of the Third District Court of Appeal (217 So.2d 844) is to authorize an assessment of less than the entire interest of the real property. Thereby, a conflict arises with Wolfson v. Heins, supra.
A shopping center planned and developed as a unit may embrace a diversity of stores so as to enable a shopper to fulfill his needs at one stop, but the success of the shopping center depends primarily upon sufficient parking area so as to alleviate the ever-increasing traffic problems. So it is that the land used for the parking area is an integral part of the shopping center and just as important to its development as the land upon which the buildings are erected. The tax assessor was justified in placing the same value on the land used for the parking area as the land upon which the improvements were erected.
The tax assessment is presumed to be correct and, in order to sustain his burden of proof in challenging a tax assessment, the taxpayer must present proof which excludes every reasonable hypothesis of a legal assessment. This Court in Folsom *838 v. Bank of Greenwood, 97 Fla. 426, 120 So. 317 (1929) said:
"The prima facie correctness of an assessment when made by the proper officers must be affirmatively overcome by appropriate and sufficient allegations and proofs excluding every reasonable hypothesis of a legal assessment."
The plaintiff did not sustain the burden of proving the valuation to be so excessive and unreasonable that it is arbitrary and capricious. The experts called by the Taxing Authorities sustained the finding of those employees of the tax assessor who originally determined the assessed value of tracts 002, 004, and 095. There is no necessity for the trial court to determine whether the "operating agreement" dated January 11, 1966 affected the value of the property in tracts 004 and 095. These tracts were appraised in connection with the shopping center unit as vacant land for future expansion.
The District Court considered a 1965 transaction between Dadeland and Federated as competent evidence to establish value. The conveyance was an exchange transaction in which consideration for 5.71 acres of land was not in money but rather of the property, i.e., Federated's leasehold in the shopping center's property. Federated did not give Dadeland any cash in exchange for the encumbered fee in the 5.71 acres of land. An exchange transaction such as this is not competent to prove market value. To render evidence of voluntary sales competent they must be for money and not, in whole or in part, by way of exchange. Sanitary District of Chicago v. Boening, 267 Ill. 118, 107 N.E. 810, 812 (1915); Morgan v. State, 343 S.W.2d 738 (Tex.Civ.App. 1961); United States v. Leavell and Ponder, Inc., 286 F.2d 398 (5th Cir.1961); State v. McDonald, 88 Ariz. 1, 352 P.2d 343 (1960); Jackson v. Raisor, 248 S.W.2d 905 (Ky. 1952); Jefferson Park District v. Sowinski, 336 Ill. 390, 168 N.E. 370 (1929); Hay v. Boggs, 77 Wash. 329, 137 P. 474 (1914); Ft. Worth Improvement District No. 1 v. Weatherred, 149 S.W. 550 (Tex.Civ.App., 1912); Volume I, Orgel on Valuation under Eminent Domain, Second Edition, Section 140; and Volume 5, Nichols on Eminent Domain, Third Edition, Section 21.3.
For the above reasons the opinion of the District Court is quashed and this case is remanded to the District Court with instructions that it be further remanded to the Circuit Court with directions to enter final judgment for the defendants (Petitioners).
ERVIN, C.J., and ROBERTS, DREW and CARLTON, JJ., concur.