PER CURIAM.
Metropolitan Dade County appeals from a final judgment, as amended, for the plaintiffs below, Jacob Colsky and Morton Halpern.
Plaintiffs sued Dade County, Florida to recover 1967 ad valorem taxes which they had paid under protest. After final hearing a judgment was rendered for Dade County. The trial court found that the improvements on plaintiff’s land were not substantially complete as of January 1, 1967; that the property should have been assessed as unimproved land for 1967 and that plaintiffs were entitled to a proportionate refund of those taxes.
The real point argued herein is whether there was substantial competent evidence to sustain a finding by the trial court that the structure in question was not substantially complete as of January 1, 1967.
Section 193.071(4), Fla.Stat., F.S.A. (formerly § 193.11(4), Fla.Stat., F.S.A.) provides:
“All taxable lands upon which active construction of improvements is in progress and upon which such improvements are not substantially completed on January 1, of any year shall be assessed for such year, as unimproved lands. Provided, however, the provisions hereof shall not apply in cases of alteration or improvement of existing structures.”
The record reveals that plaintiffs planned and intended to construct a seven story professional office building. A building permit was taken out in 1965 and construction was still in progress to some degree on January 1, 1967.
The building plans for this structure and testimony show it was to be constructed as a “shell building” and was to be built and used for rental purposes. The trial court’s finding that “the structure, the Professional Arts Building, was planned to be, and was being constructed in shell form * * * ” is not contested in this appeal. Office space in the “shell building” was leased through a rental agent, at which time the tenant would submit a sketch of how he wanted the leased area laid out. Separate plans for the tenants’ space would then be prepared by an architect, a separate building permit would be obtained for the separate improvements specified by the tenant and the improvements would then be built.
In other words, the “shell building” was the original structure and was built under separate plans and pursuant to a separate building permit. As office space was leased new architectural plans were prepared and separate distinct building permits were issued for construction of and on the space necessary for the tenant.
In Sherwood Park, Ltd., Inc. v. Meeks, Fla.App. 1970, 234 So.2d 702, the court stated at page 703:
“ * * * a building is ‘substantially complete’ when it has reached the stage where it can be put to the use for which it was intended, even though some minor items might be required to be added. We construe that it was the intent of the legislature not to tax the property other than as unimproved unless it was complete to the point where it could be used for the purposes intended.”
*442 For other cases holding generally that a building is substantially complete when it can be put to the use for which it was intended see: Tabet Lumber Co. v. Baughman, 79 N.M. 57, 439 P.2d 706 (1968) and State ex rel. Stites v. Goodman, Mo.1961, 351 S.W.2d 763.
In Culbertson v. Seacoast Towers East, Inc., Fla.App. 1970, 232 So.2d 753, cert, discharged, Fla.1970, 236 So.2d 761, we affirmed the action of the trial judge in finding that the highrise apartment involved therein was not substantially complete as of January 1, 1967. There the evidence supported a finding that the highrise apartment building was not substantially complete for the purpose for which it was intended, i. e. a highrise apartment with extensive public service areas which were an essential part of the improvement.
The evidence below revealed that as of January 1, 1967 the exterior of this shell building was approximately 85% complete; that the area occupied by the elevators, stairwell, transformer vault, men and women’s public toilets, air-conditioning machine rooms and electrical closets were basically complete; that 58 suites were occupied or ready for occupancy and that on September 12, 1966 the building contractor had notified the director of the Miami Building & Zoning Department that the basic building was completed.
While occupancy may be the single most telling indication of completion in a building intended to be used as a highrise apartment with a large public service area as an essential part of the improvement, we do not believe that this statement should be strictly applied to a structure planned and built as a “shell building” which is to be used for rental purposes and in which the interior space is to be completed, or finished, only when a tenant leases the space and where separate plans and building permits are required for completion of this space.
A tax assessment is presumed correct and the taxpayer must carry the burden of presenting proof which excludes every reasonable hypothesis of a legal assessment. Homer v, Dadeland Shopping Center, Inc., Fla.1969, 229 So.2d 834. There is insufficient, competent substantial evidence to sustain the finding that the Professional Arts Building was not substantially complete on January 1, 1967 for the purpose for which it was intended, i. e., a shell structure for future rental to tenants under separate building plans and separate building permits. It was error, therefore, to hold that this land and structure must be assessed as vacant land and to order a refund of taxes to the plaintiffs.
The county raises other arguments for reversal but in view of our determination above we see no reason to discuss or pass on them.
Reversed and remanded with instructions to set aside the final judgment for the plaintiffs and to enter final judgment for the county.
It is so ordered.