387 So.2d 430 (1980)
Samuel J. COLDING, Appellant,
v.
R.O. KLAUSMEYER, Appellee.
No. 80-103.
District Court of Appeal of Florida, Second District.
August 6, 1980.
Rehearing Denied September 9, 1980.
*431 Donald A. Pickworth, Collier County Atty., Naples and Gaylord A. Wood, Jr., Fort Lauderdale, for appellant.
J. Patrick McElroy and Richard W. Blyler of Greene, Mann, Rowe, Stanton, Mastry & Burton, Clearwater, for appellee.
CAMPBELL, Judge.
This appeal is brought by the defendant in the trial court, the Collier County Tax Assessor, and requires us to determine whether certain improvements constructed by appellees were "substantially completed" as of January 1, 1978. We conclude that they were and reverse the trial court's determination to the contrary.
Appellees are developers of "regional" shopping malls. In 1976, they applied to the city of Naples for a building permit to construct what they characterized as a "shell only" for a shopping mall. By September of 1977, appellees had constructed the shell according to the plans which they had submitted with their application, and a Certificate of Occupancy was issued by the city on September 21. At that point, twenty-three of the seventy-five stores which had been contemplated, occupying approximately one-third of the total planned tenant space, were occupied by tenants.
The developers subsequently declared only the value of the unimproved land for property tax purposes, claiming that the mall was not substantially completed as of January 1, 1978. The Collier County Tax Assessor rejected that claim and assessed the value of the unimproved land and the completed, partially occupied shell. The developers paid the tax due on the unimproved land and filed a complaint in the circuit court to compel the tax assessor to reduce the assessed value.
The issue at trial and on appeal is whether the "regional" shopping mall was substantially completed as of January 1, 1978. The developers contend, in essence, that the intended use of the mall was as a "total retail complex", and that this use would not be realized until the shell and all of the tenant spaces had been completed. The tax assessor, on the other hand, maintains that the developers had intended to construct a shell building, and that they had substantially completed that improvement by September, 1977, as evidenced by the Certificate of Occupancy.
The Coastland Mall in Naples was described by the developers' chief witness as a "regional shopping center" and was distinguished from a "strip center". Developers of "strip centers" complete both the shell and the individual stores within before they lease the stores. When developers apply for a permit to construct such shopping centers, the plans which they submit generally show everything that is to go into the structure, including the completed tenant spaces. When the structure is complete, the tenant moves in and begins paying rent, with only interior decorating remaining to be done by the tenant.
A "regional" shopping center, on the other hand, was described as a shell building generally anchored on either end by "firstline" stores.[1] The shell consists of everything but the completed tenant spaces. When the developers procure a tenant, the tenant prepares its own plans and specifications according to its unique needs, applies for its own building permit, constructs the improvements and receives a Certificate of Occupancy. The cost of these individual improvements was paid for by the developers in the instant case in the form of an allowance to each tenant. When the tenant space has been completed, the tenant begins paying a guaranteed minimum rent plus a percentage of its gross sales as reimbursement to the developers for the allowance.
*432 As of January 1, 1978, twenty-three tenant spaces had been completed in the Coastland Mall. Since this was less than one-third of the spaces contemplated, the developers assert that the total retail complex was not substantially completed. In making that assertion, the developers gloss over two facts: they applied for a permit to construct, and received a Certificate of Occupancy for, a shell structure; and the value placed by the tax assessor on the property and improvements would have been much higher had all of the tenant spaces been completed.
Section 192.042(1), Florida Statutes (1977), provides that substantially completed means "that the improvement or some self-sufficient unit within it can be used for the purpose for which it was constructed." Although the developers here may have had other purposes in mind when they decided to construct the Coastland Mall, their immediate and primary purpose was to erect a "shell building" within which individual stores would be constructed. This they had done by the January 1 tax date, and the value of that structure, along with the value of the twenty-three completed stores, was assessed. The fact that 52 other spaces remained to be leased to and completed by tenants is irrelevant.
While occupancy may be the single most telling indication of completion ..., we do not believe that this statement should be strictly applied to a structure planned and built as a "shell building" which is to be used for rental purposes and in which the interior space is to be completed, or finished, only when a tenant leases the space and where separate plans and building permits are required for completion of this space.
Metropolitan Dade County v. Colsky, 241 So.2d 440, 442 (Fla. 3d DCA 1970). See also Manufacturers National Corporation v. Blake, 287 So.2d 129 (Fla. 3d DCA 1973).
We also point out that a "tax assessment is presumed to be correct and, in order to sustain his burden of proof in challenging a tax assessment, the taxpayer must present proof which excludes every reasonable hypothesis of a legal assessment." Homer v. Dadeland Shopping Center, Inc., 229 So.2d 834 (Fla. 1969). The taxpayer here fails to show that the assessment was illegal. Accordingly, the case is reversed with instructions to reinstate the tax assessor's assessment.
HOBSON, Acting C.J., and OTT, J., concur.
NOTES
[1] In this case, Maas Brothers and Sears, Roebuck & Company were the anchor stores. They own the land and the improvements constructed thereon and are taxed separately.