H. I. FINCH, L. A. ENGEL and THOMAS H. COBBS, PARKVIEW TRUSTEES, APPELLANTS, v. N. MURRY EDWARDS and MABEL EDWARDS, HIS WIFE, GEORGE R. HUNSCHE, ETC., RESPONDENTS.—198 S. W. (2d) 665.

St. Louis Court of Appeals. Opinion filed December 17, 1946

Opinion modified by the Court of its own motion, respondent's motion

for a rehearing, or, in the alternative, to transfer cause to

Supreme Court of Missouri, overruled, and opinion

filed on January 20, 1947.

*Wm. H. Armstrong* and *Henry C. M. Lamkin* for appellants, *Cobbs, Logan, Roos & Armstrong* of counsel.

*Grover C. Sibley* for respondents, N. Murry Edwards and Mabel Edwards.

SUTTON, C.—This is a suit in equity filed in the Circuit Court of the City of St. Louis to foreclose the lien of certain assessments on residential property in said city owned by defendants N. Murry Edwards and Mabel Edwards, his wife.

Plaintiffs in their petition allege that they are the regularly elected, qualified, and acting trustees under and in accordance with the provisions of a trust indenture dated November 25, 1905, by and between Beredith Realty Company, a Missouri corporation, as party of the first part, and John C. Roberts, Adrian O. Rule, and Henry S. Caulfield, trustees, as parties of the second part, recorded in the recorder's office of the City of St. Louis on November 27, 1905; that defendants N. Murry Edwards and Mabel Edwards are the owners of record and now in control of lot 26, block 4, of the subdivision entitled Parkview, in block 5410 of the City of St. Louis, known as 6205 McPherson Avenue; that said property has a frontage of eighty feet on McPherson Avenue; that it was acquired and is now held by defendants N. Murry Edwards and Mabel Edwards, subject to the provisions of said trust indenture; that defendant George R. Hunsche and defendant G. W. Richmann are respectively the trustee and beneficiary in a deed of trust executed by defendants N. Murry Edwards and Mabel Edwards to secure the payment of promissory notes described in said deed of trust; that prior to the execution of said trust indenture the Beredith Realty Company was the owner of certain lands situate partly in the City of St. Louis and partly in the county of St. Louis; that prior to the execution of said trust indenture the Beredith Realty Company caused said tract of land to be subdivided and laid out as a residential subdivision, named it Parkview, and made a plat thereof, and caused the plat of the portion thereof lying within the City of St. Louis to be made and to be submitted to and approved by the Board of Public Improvements of said city, and caused said plat to be duly filed for record in the office of the Recorder of Deeds for said city on December 21, 1905, and that said plat was duly recorded in plat book 17 page 42; that said Beredith Realty Company, being the owner of said property, and said property being free and clear of liens and incombrances of any kind, did, on November 25, 1905, execute and deliver to John C. Roberts, Adrian O. Rule, and Henry S. Caulfield, as trustees and their successors in trust, said trust indenture which was recorded in the office of the Recorder of Deeds in the City of St. Louis; that in said trust indenture it was

provided that in the case of the death, removal from the city or refusal to act of either of said trustees, the owners of the lots in said subdivision should have authority to elect a successor trustee; that two of the original trustees have died and the other has resigned; that the owners of the lots of said subdivision have in accordance with said trust indenture duly elected plaintiffs as trustees under said trust indenture, and that they are now the duly elected, qualified and acting trustees under and in accordance with said trust indenture; that under said trust indenture the trustees were given an easement on and general control over the avenues, streets, walks, parks, and alleys of said subdivision; that they were given authority, and it was made their duty to maintain Parkview as a high grade residence subdivision for the benefit of those who might own lots in said subdivision; that they were given authority and it was made their duty to construct, reconstruct, maintain and repair said avenues, streets, and alleys, to light, police and sprinkle and clean said avenues, streets, alleys, parks and walks, to plant, grow and preserve turf, trees and shrubbery in appropriate places in said subdivision, to collect, remove and carry away debris, garbage and waste, and generally do any and all things needful to preserve Parkview as a high grade private residence subdivision; that under said trust indenture the said Parkview trustees were given authority to levy and collect from the owners of lots in said subdivision such money as might be needed to pay the expenses of carrying out and performing the duties assigned to them and in exercising the powers given to them in said trust indenture; that under said trust indenture the trustees were also given authority to make special assessments for the improvements of the avenues, streets and alleys, and for the collection of garbage and for other special matters, which said special assessments were authorized in addition to the general maintenance assessments; that all the rights, powers, and authorities given to the trustees in said trust indenture and all the duties imposed upon the trustees by said trust indenture are now vested in and given to and imposed upon plaintiffs herein as the present acting trustees under said trust indenture; that under and in accordance with said trust indenture, plaintiffs, acting as trustees thereunder, have for many years during the month of December of each year levied and assessed against each lot in Parkview, including lot 26 in block 4 of Parkview, an assessment equal to fifty cents per front foot of the frontage of each lot for the general maintenance of Parkview during the succeeding year; that under and in accordance with said trust indenture, plaintiffs, acting as trustees thereunder, in the spring of 1941, determined that it would be necessary to resurface the roadway of the streets and avenues in Parkview, and in order to raise the funds necessary for said improvements plaintiffs levied an assessment against each lot in Parkview for a sum equal to fifty cents per front foot of the

frontage of each lot as a special assessment for the resurfacing and improving of said streets and avenues; that the assessments against defendants' said lot 26 in block 4 of Parkview for the general maintenance of Parkview during the years 1940, 1941, 1942, 1943 and 1944, for the amount of $40 each, have not been paid; that the special assessment of $40 made in 1941 for the improvements of the streets of Parkview has not been paid; that under said trust indenture, which gives authority for the making of said assessments and provides for said assessments and the collection thereof, said assessments are made a special lien on the lots against which they are levied, and it is provided that said assessments shall continue to be a lien on did lots until the same are paid in full; that it is also provided in said trust indenture that if said assessments are not paid promptly when due said Parkview trustees may institute and prosecute legal proceedings at law or in equity or in both to compel the payment of said assessments and to enforce the lien of said assessments against said lots; that it is also provided that said lots on which said assessments shall not be paid may be sold under the order and decree of any court of equity having jurisdiction, in like manner and as if the amount so due and unpaid had been secured by a mortgage on said lots. And plaintiffs pray that the court decree that said assessments are a charge and lien against said property, and that said property be ordered sold for the purpose of satisfying said lien.

On April 25, 1945, defendants N. Murry Edwards and Mabel Edwards filed their motion to dismiss plaintiffs' petition, alleging that plaintiffs as Parkview trustees have no legal capacity or right to bring or maintain this suit, and that the petition fails to state a claim upon which relief can be granted; that of the said three parties of the second part named as trustees in said trust indenture, John C. Roberts and Adrian O. Rule are now and have been for a long time deceased, and that the other party, Henry S. Caulfield, long ago ceased to be a trustee, and that upon the last of the three parties ceasing to function as trustees the trust created by the trust indenture ceased under the provisions of clause F of said indenture, and the election of successor trustees was no longer authorized, and that plaintiffs as successor trustees were no longer authorized or empowered to act as such.

The hearing of the motion resulted in a judgment dismissing the petition, and plaintiff's appeal.

The motion to dismiss appears to be based on two grounds, (1) that plaintiffs have not legal capacity to sue, and (2) that the petition fails to state a claim upon which relief can be granted.

Defendants say that the motion to dismiss the petition is authorized by the provisions of sections 61 and 62 of the Civil Code, Session Laws of 1943, pp. 374, 375.

Section 61 provides that objection that plaintiff has not legal capacity to sue may be raised by motion whether or not the same may appear from the pleadings and other papers filed in the cause, and that the grounds of the objection may be supplied by affidavit and may be controverted by opposing affidavit.

Section 62 reads as follows: "The objections of failure to state a claim upon which relief can be granted or to state a legal defense to a claim may be raised by motion when these objections appear on the face of the pleadings."

In this case there was no affidavit filed in support of the motion. It does not appear from the record that the trust indenture was introduced in evidence. However, the record shows that the indenture was before the court and was considered by the court in disposing of the motion.

Moreover, the parties have stipulated here that the trust indenture shall be included in and become a part of the record on appeal to the same extent as if it had been offered and received in evidence by the court below, and have lodged here a copy of the indenture. This court has ordered that said indenture be included in and become a part of the record on appeal in accordance with said stipulation, and the parties insist that the cause be determined here on its merits in consideration of the pertinent provisions of the trust indenture and the allegations of the petition.

Clause E of the trust indenture provides that "the Realty Company hereby gives, grants and conveys unto and confers upon the parties of the second part, as joint tenants and not as tenants in common, and unto the survivor or survivors of them, and unto the successor or successors of them, or either of them, for and during the lifetime of the last survivor of the three persons named as parties of the second part in this indenture, but no longer, the following rights and powers to be exercised by them as trustees for the benefit and advantage of each of the aforesaid lots, and of the owner or owners of any one or more of them. . . ."

Clause E further provides as follows: "Should any of said parties of the second part die or remove from the City of St. Louis, or decline to act or become incompetent by reason of sickness or other cause to discharge the duties or avail of or exercise the rights or powers hereby granted or bestowed as trustees under this indenture, then and thereupon it shall be the duty of the survivor or remaining trustees, as soon as reasonably may be, to call a meeting to be held at a convenient place in said city, of all the then owners of said residence lots, first giving ten days written or printed notice of the time and place of such meeting, the said notice to be served as provided above with respect to the payment of the annual amount required by the trustees. And such of the owners as attend said meeting shall select a chairman and proceed to elect by vote or ballot (the owner or owners of said

residence lots being entitled to only one vote for each of said lots owned by him or them) a successor or successors to fill such vacancy or vacancies. And the person or persons receiving the highest number of votes or ballots shall be deemed elected, and shall, when his or their acceptance in writing is delivered to said chairman, at once and by force of this indenture succeed to, be vested with and possess and enjoy, as a joint tenant but not as tenant in common, with the remaining trustees or trustee, all the estate, interest, rights, privileges and powers by this indenture granted to and be subject to all the duties and restrictions by this indenture imposed upon his or their predecessors or predecessor. And such a selection (at a meeting to be called, organized and conducted in the manner aforesaid) shall be made as often as a vacancy, from any of said causes, occurs, until the death of the last survivor of the three persons named in this indenture as parties of the second part. Should such survivor or remaining trustee or trustees refuse or neglect to call such meeting within sixty days after the occurrence of such vacancy, then such meeting may be called by the owners or owner of any five of said residence lots, who shall give a like notice thereof, signed by them and served as aforesaid.''

Clause F of the indenture reads as follows: ''Upon and from and after the decease of the last survivor of said three persons named as parties of the second part, all the easements, restrictions, covenants and charges hereinbefore made, declared or imposed shall be and remain in full force, but strictly and only as easements, restrictions, covenants and charges, and not as trusts. And thenceforth it shall be lawful and power is hereby given to the owners, from time to time and at all times, of the residence lots, or of the major part of said lots, to carry out, continue and perpetuate in respect of said subdivision the general objects and intent of said trusts and of this indenture, in manner following, that is to say: They, or the owners of the majority of said lots, shall, by vote or other agreement, adopt such reasonable rules and regulations as they may think proper affecting the said avenues, streets, parks, walks, alleys and other objects of easement, and have and avail of and exercise like rights, powers and duties as are hereinbefore granted to or imposed upon the trustees, including the right and power from time to time to assess and charge and apportion against the lots in said subdivision, and among the owners thereof, a sum sufficient for the same purposes as said trustees might have made same while their powers and rights aforesaid remained extant, provided, that while discretion as to all the matters in this clause mentioned are to be vested in the owners of all or of the major part of said lots as aforesaid, the actual doing of such things, including the collecting from the lot owners as aforesaid, shall be done by and through such person or persons as shall be chosen or appointed for that purpose by said owners, in his or

their own name or names, but with the description of agent or agents of Parkview. And at all meetings of said owners each of said lots shall entitle the owner or owners to one vote, which may be cast in person or by proxy. And any such meeting may be called to be held at some convenient place in said city by a written or printed notice (signed by at least five of such owners) of the time and place of such meeting, and the object thereof, which notice shall be served as above provided with respect to the annual payments required from lot owners.''

We do not think the motion to dismiss was authorized by section 61 of the code, for it goes to the merits of the cause rather than to the capacity of the plaintiffs to sue. In other words, the want of capacity to sue depends upon the termination of the trust, and if the trust was terminated there was then on defendants' theory no cause of action in plaintiffs as distinguished from no capacity to sue. The want of capacity to sue arises by showing no cause of action on the merits, that is, by going into the merits and showing particular provisions of the trust indenture not appearing on the face of the petition. In our opinion this section was not intended to serve such a purpose. And it is obvious, we think, without discussion, that the motion is not authorized by section 62, for that section authorizes such a motion only where the failure of the petition to state a claim upon which relief can be granted appears on the face of the petition. The motion in its nature and effect is nothing more nor less than what was known under the old practice as a speaking demurrer. However, the trial judge saw fit to treat it as a general demurrer as though the pertinent provisions of the trust indenture had been set out in *haec verba* in the petition. Of this the defendants can not and do not complain, for this is just what they invited the court to do.

It is plaintiffs' contention that the trust created by the trust indenture terminates upon the death of the last survivor of the three persons named in the indenture as parties of the second part, John C. Roberts, Adrian O. Rule, and Henry S. Caulfield, that is, upon the death of the one who outlives the others. It is defendants' contention that the trust terminates upon the death or resignation or ceasing to function as trustee of the last survivor of the three persons named in the indenture as parties of the second part. Defendants thus read into the indenture words the Beredith Realty Company did not see fit to write into it. Defendants urge in argument that it was the intention of the Beredith Realty Company as shown by the provisions of the indenture that the trust should continue only so long as at least one of the original trustees continued to function as a trustee. This view cannot be maintained because it is utterly out of accord with the plain and unambiguous wording of the indenture. In the very first words of clause E the Realty Company gives, grants and conveys unto and confers upon the parties of the second part and

unto the survivor or survivors of them and unto the successor or successors of them, or either of them, for and during the lifetime of the last survivor of the three persons named as parties of the second part the rights and powers to be exercised by them as trustees. The grant is not only unto the three persons named as parties of the second part, but is also unto the successor or successors of them, or either of them, and the grant is in express terms for and during the lifetime of the last survivor of the three persons named as parties of the second part. How can such language be construed to mean that the trust shall continue only so long as at least one of the three parties named continues to function as a trustee without altering it beyond recognition?

And further on in clause E it is provided that the selection of a successor or successors to fill a vacancy or vacancies shall be made as often as the vacancy occurs until the death of the last survivor of the three persons named in the trust indenture as party of the second part. How can such language be construed to mean until the resignation or ceasing to function as trustee of the last survivor of the three persons named as parties of the second part? "Death" when used with respect to a person is commonly and ordinarily understood to mean departure from life. We are unable to see how it may be construed as used in this indenture as a resignation or ceasing to function as a trustee.

In clause F it is provided that upon, from and after the decease of the last survivor of said three persons named as parties of the second part all the easements, restrictions, covenants and charges hereinbefore made, declared or imposed shall be and remain in full force but strictly and only as easements, restrictions, covenants and charges, and not as trusts. The word "decease" is never used, so far as we are advised, in any sense other than that of departure from life of a person. 26 C. J. S. 33. How then may it be construed to mean, as used in this indenture, the resignation or ceasing to function of a person as a trustee?

Defendants, to support their view, call to our attention another provision, that is, paragraph 5 of clause D of the indenture, as follows:

"That said easements and each of them are created and granted subject to the powers and rights granted to the parties of the second part by clause E of this indenture, and to the provisions of clause F of this indenture, and shall be availed of and enjoyed only under and subject to such reasonable rules and regulations as the parties of the second part or their successors may from time to time make and prescribe, or as may be prescribed under and by authority of the provisions of said clause F; and none of the things, power to do which are hereinafter conferred upon the parties of the second part or their successors, shall be done excepting by and through the parties of the second part or their successors or with their written permission, and

after the death of the last survivor of the three parties named as parties of the second part in this indenture no such things shall be done excepting by and through the agents provided for in clause F, or with their written permission.''

Obviously, this provision does not aid defendants' view. On the contrary, it supports plaintiffs' view. It will be observed that under this provision the easements, and each of them, created and granted, shall be availed of and enjoyed only under and subject to such reasonable rules and regulations as the parties of the second part ''or their successors'' may from time to time make and prescribe, and that none of the things, power to do which are hereinafter conferred upon the parties of the second part ''or their successors'' shall be done excepting by and through the parties of the second part ''or their successors,'' and ''after the death of the last survivor of the three parties named as parties of the second part'' no such things shall be done excepting by and through the agents provided for in clause F. It thus appears that every power granted to the parties of the second part is also granted to their successors and the things that the parties of the second part or their successors are authorized to do as trustees is inhibited only after the death of the last survivor of the three parties named as parties of the second part. The language of this provision is in perfect harmony with the language of clause E and clause F, hereinbefore set out and discussed. We do not see how such language could be made plainer, and we know of no rule or reason why it should not be given effect. If the provisions of the indenture were intended to mean what defendants say they mean, it would have been an easy matter to have said so in the indenture in simple language.

Defendants say that the word ''survivor'' is often used to indicate a trustee who continues to administer the trust after his co-trustee is disqualified, has been removed, renounces, or refuses to act, as well as when he dies. This is so, but it is obvious that it was not so used in the trust indenture here under review. The language of the indenture does not admit of such a construction. In its ordinary, as well as in its legal, signification ''survivor'' means one who outlives another, or one of two or more persons who lives after the other or others have deceased. 60 C. J. 1189. It is manifest that the word is used in the indenture here under review in its ordinary and common meaning.

Defendants further urge in argument that their construction of the indenture is the only reasonable construction to be given it because one of the original trustees might have gone beyond the seas so that his whereabouts would have been unknown to the lot owners, and for inability to prove his death the trust would have become perpetual. It is not contended that any such thing occurred, but it is conceded that the last survivor is here and is still living in Parkview subdivision. We cannot accept the view that such an unlikely happening as that

any one of the persons selected as original trustees by the owner of the tract to become a residential subdivision would leave his home and go to parts unknown is to be controlling in construing the trust indenture as against its plain and unambiguous language. Moreover, there is a way of showing the death of a person by presumptive or inferential evidence. 25 C. J. S. 1054, 1065.

Defendants further contend that the trust has terminated because its original purpose has long since been accomplished. We do not think that this is so. Parkview was established as an enduring residential subdivision. It was contemplated that it would continue as a residential subdivision through a long period of years. It still has streets, avenues, alleys, parks, and walks to be maintained and kept in suitable repair. While the duties to be performed and the powers to be exercised by the trustees are not now so extensive as when the subdivision was first established, nevertheless such duties and powers still need to be performed and exercised for the proper maintenance of the avenues, streets, alleys, parks, and walks.

Language—stressed by defendants—used in prescribing the method of selecting successor trustees may not be permitted to control over the positive, unambiguous and unyielding language used in the granting clause and wherever directed to the duration or termination of the trust. Such language is not open to construction. It speaks for itself and must be given effect. Nor are we concerned, in the face of such language, with the reason why the lifetime of one or the other of the persons named as original trustees was made to determine the duration of the trust.

It is pertinent to observe in passing that, if we could consider what defendants' learned counsel has stated in argument dehors the record here, we would be justified in concluding that successor trustees have been acting as such for many years with the acquiescence of the lot owners and we would thus have the benefit of the practical construction placed upon the indenture by the parties themselves in favor of the construction we have given it.

The Commissioner recommends that the judgment of the circuit court be reversed and the cause remanded.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed and the cause remanded. *Hughes, P. J., McCullen* and *Anderson, JJ.,* concur.

ON MOTION FOR A REHEARING OR TO TRANSFER TO SUPREME COURT.

Defendants; on motion for a rehearing or to transfer the cause to the Supreme Court, suggest, for the first time, that this court is without jurisdiction because the title to real estate is involved. There

is no merit in this suggestion. It has been consistently and uniformly ruled by our Supreme Court that suits to foreclose or enforce mortgages, tax bills, mechanics' liens, and other liens do not involve title to real estate. In all such cases title is necessarily conceded to be in the defendant, and the plaintiff's action, instead of disputing defendant's title, merely endeavors to subject the land, as the defendant's property, to the plaintiff's lien rights. [Nettleton Bank v. McGauhey's Estate, 318 Mo. 948, 2 S. W. (2d) 771, l. c. 773; City of University City v. Amos, 346 Mo. 319, 141 S. W. (2d) 777; University City v. Amos, Mo. App., 236 Mo. App. 428, 156 S. W. (2d) 65.] We can see no distinction in principle between such cases and the case at bar.

The motion should be overruled. The Commissioner so recommends.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. Defendants' motion for a rehearing or to transfer to Supreme Court is accordingly overruled. *Hughes, P. J., McCullen* and *Anderson, JJ.*, concur.