THE STATE ex rel. EDMOND KOELN, Collector of the Revenue, v. WEST CABANNE IMPROVE- MENT COMPANY et al.; JOHN H. VETTE, Ap- pellant.

Division One, June 2, 1919.

1. **EASEMENT TO LAND: Extinguishment by Taxation.** An ease- ment in that part of a general private court which does not lie in front of defendant's lot cannot be so extinguished by a system of quit-claim deeds made by the other abutting property owners "for the purpose of vacating the court as a private street" as to make such part subject to taxation by the State.

2. **TAXATION: Public Purpose: Uniformity.** Taxes must be levied and collected by general laws, for public purposes only, and must be uniform upon the same class of subjects; and taxing officers are instruments provided by the Legislature for the sole purpose of exercising these constitutional powers.

3. ———: **According to Market Value: Land and Appurtenances.** The statute (Sec. 11519, R. S. 1909) declaring that the words "real property," "real estate" and "land" shall be held to mean and include not only the land itself, "but also all buildings, struc- tures and improvements and other permanent fixtures," and "all rights and privileges belonging or in anywise pertaining thereto," expressly recognizes to its fullest extent the principle that "ac- tual value" includes the elements which affect that value, which means the price at which it may be bought and sold in the market.

4. ———: ———: ———: **Destruction of Easement.** An easement appurtenant can have no existence apart from the land to which it pertains, and an attempted severance of it not only destroys its value, but diminishes the value of the dominant estate; and any revenue system which destroys the easement violates fundamental constitutional rights.

5. ———: **Separate Assessment of Easement: Double Taxation.** Where the owner has paid the taxes assessed against his lot abutting on

a private court, including the tax chargeable upon his easement in the court, any attempt to charge him a further tax upon that easement would be double taxation, and unlawful; nor can his easement in the court be extinguished by any arrangement between the owners of the abutting lots by an exchange of deeds made for the purpose of extinguishing the court as a private way, nor by an assessment and levy of taxes on said court by the taxing officers in accordance with such arrangement.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields,* Judge.

REVERSED AND REMANDED.

*William F. Smith* and *Henry Higginbotham* for appellant.

(1) A valid assessment is a jurisdictional prerequisite to the levy or collection of a tax. Abbott v. Lindenbower, 42 Mo. 168; State ex rel. v. Thompson, 149 Mo. 455; State ex rel. v. Mission Free School, 162 Mo. 336. And there can be no lawful assessment except in the manner prescribed by law. State ex rel. v. Lesser, 237 Mo. 318; Leavell v. Blades, 237 Mo. 710. (2) The power of taxation is a sovereign right which belongs alone to the State, and which can be exercised only in pursuance of laws passed by the Legislature for that purpose. State ex rel. v. Shortridge, 56 Mo. 130; State ex rel. v. Cunningham, 153 Mo. 651. Assessors and tax collectors must look alone to the law for guidance in the discharge of their duties. State ex rel. v. Snyder, 139 Mo. 549; State ex rel. v. Bridge Co., 134 Mo. 336; State ex rel. v. Lesser, 237 Mo. 318. To determine that a certain article or interest in land is property according to the common law or general classification, is not to determine whether it is taxable *eo nomine,* although the Constitution provides that all property shall be taxed. The *quo modo* is a matter of legislative control, and the statute must be steadily followed. De Witt v. Hays, 2 Cal. 468, 56 Am. Dec. 352; Willis v. Commonwealth,

97 Va. 672; Williams v. Sheriff and Tax Collector, 107 La. 101, 105; Kansas City v. Building & Loan Assn., 145 Mo. 53; Abbott v. Lindenbower, 42 Mo. 168. (3) An easement in land cannot be taxed independently, but only as enhancing the value of the dominant tenement— in the absence of a statute authorizing its separate taxation. City of Fall River v. County Comr. of Bristol, 125 Mass. 567; Boston Mfg. Co. v. Inhabitants of Newton, 22 Pick. 22; State v. St. P. & D. Railroad Co., 81 Minn. 422; State v. Minneapolis Mill Co., 26 Minn. 229; Eastman v. St. Anthony Falls Water Power Co., 43 Minn. 65; Town of Woodruff Place v. Raschig, 147 Ind. 525; Capital City Gaslight Co. v. Charter Oak Ins. Co., 51 Iowa, 31; Bradley v. Town of Rock Falls, 163 N. W. (Wis.) 168; Matter of Hall, 116 App. Div. 729, 102 N. Y. Supp. 5; Tax Lien Co. of New York v. Schultze, 213 N. Y. 9. (4) Intangible property appurtenant to tangible property unavoidably and automatically disturbs itself wherever the tangible property is, and, for the purposes of taxation, enhances the value of every part of the tangible property; and should be taxed with and as a part of it. Atchison, etc., Ry. Co. v. Sullivan, 173 Fed. 464; Stein v. Mayor of Mobile, 17 Ala. 240; People ex rel. v. Barker, 48 N. Y. 177; State ex rel. v. Western Union Tel. Co., 165 Mo. 506; Whiting v. Mayor, 106 Mass. 98. (5) The courts condemn in strong language the arbitrary severance into artificial, independent or fragmentary parts, property which, from the good sense of the thing, naturally forms a unit: as, the separation of appurtenances from the dominant tenements; of tangible from intangible property with which it is connected; of buildings and superstructures from the land on which they stand; and even of the cutting up of that which is a single lot or parcel of land by the tax officials drawing arbitrary lines through the same, thereby dividing the land into needless, nonsensical, unusual, infinitesimal, or valueless fragments or interests. Essery v. Bell, 18 Ontario Law Rep. 76; People v. Fredericks;

48 Barb. 179; People ex rel. v. Barker, 48 N. Y. 77; State ex rel. v. Railroads, 215 Mo. 488; Aldridge v. Essex Road Board, 51 N. J. Law, 166; Muller v. Bayonne, 55 N. J. Law, 102; Biddleman v. Brooks, 28 Cal. 72; Toothman v. Courtney, 62 W. Va. 181; Mullins v. Cemetery Assn., 259 Mo. 152; Rackliffe-Gibson Const. Co. v. Zeilda Forsee Inv. Co., 179 Mo. App. 229. (6) The statute, affirmatively prescribing the method of taxing land and all structures thereon, "and all rights and privileges belonging or in anywise pertaining thereto" as a unit, such statutory method is exclusive of any other method. Sec. 11519, R. S. 1909; Kansas City v. Building and Loan Assn., 145 Mo. 53; Mound City Construction Co. v. Macgurn, 97 Mo. App. 498; City of Hannibal v. Bowman, 98 Mo. App. 108; Toothman v. Courtney, 62 W. Va. 183. (7) Duplicate taxation exists where one person or subject of taxation is required directly to contribute twice to the same burden, while other persons or subjects of taxation belonging to the same class are required to contribute but once. State ex rel. v. Brinkop & Koeln, 238 Mo. 298; 1 Cooley on Taxation (3 Ed.), p. 394; Reading v. Finney, 73 Pa. St. 472. It is double taxation to assess a parcel including therein the value of an easement appurtenant which has been paid by the owner, and to assess over again against the trustees who hold the fee the value of the land in which the easement exists. People ex rel. v. Wells, 139 App. Div. 88, 202 N. Y. 518; People ex rel. v. Purdy, 143 App. Div. 392.

*Edward W. Foristel* for respondent.

(1) To constitute a public street, the intention on the part of the owner to dedicate is absolutely essential, and unless such intention can be found in the facts and circumstances of the particular case, no dedication exists; while a street may appear on the Recorder's

plats, yet, if there is an endorsement that it is reserved to the use of the property owners, that endorsement negatives any intention of its dedication to public uses. 2 Dillion on Municipal Corporation (4 Ed.), sec. 636; Collier's Estate v. Western Paving & Supply Co., 180 Mo. 388. (2) A street, not dedicated, is private property, which when owned, there is a tacit condition annexed to the ownership, that it shall contribute to the public revenue. The taxes should be against the record owner, but, after the court has once acquired jurisdiction, the proceeding is against the property. Hilton v. Smith, 134 Mo. 499; Land & Lumber Co. v. Bippus, 200 Mo. 688. (3) One who owns the fee, rather than one who owns an easement, to which it is subject, is liable for the taxes. Winston v. Johnson, 42 Minn. 398. (4) The collector shall receive taxes on part of any lot, piece or parcel of land, charged with taxes. Sec. 11459, R. S. 1909; State ex rel. Wellworth Realty Co. v. Koeln, 255 Mo. 301.

BROWN, C.—This is a suit by petition in the ordinary form to enforce the lien of the State for general delinquent taxes for the years 1909, 1910 and 1911 against three parcels of land in the City of St. Louis assessed and described as follows:

"Parcel 1. A strip of land in City Block 4539 beginning at a point in the center line of West Cabanne Place 1323 feet and 6 inches west of the west line of Hamilton Avenue, and extending southwardly parallel with said west line of Hamilton Avenue 245 feet to the south line of Townsend's Subdivision of West Cabanne, according to a plat recorded in Plat Book 12, page 132; thence westwardly 25 feet to the center line of West Cabanne Court; thence northwardly parellel with the west line of Hamilton Avenue 245 feet to the center line of West Cabanne Place, thence eastwardly 25 feet to the point of beginning.

"Parcel 2. A strip of land in City Block 4911, beginning at a point in the south line of Townsend's

Subdivision of West Cabanne Place, according to a plat recorded in Plat Book 12, page 132, 1348 feet and 6 inches west of the west line of Hamilton Avenue; thence nothwardly 434 feet to the south line of property now or formerly owned by John H. Vette; thence westwardly 25 feet; thence southwardly 434 feet, thence eastwardly 25 feet to the point of beginning.

"Parcel 3. A strip of land in City Block 4912, beginning at a point in the center line of West Cabanne Place 1323 feet and 6 inches west of the west line of Hamilton Avenue; thence northwardly 230 feet to the south line of property now or formerly owned by C. M. Clark; thence westwardly 25 feet; thence southwardly 230 feet; thence eastwardly 25 feet to the point of beginning."

The following is a plat of the strip of land described as West Cabanne Court, fifty feet wide and four hundred and ninety-two feet and six inches long, showing the "parcels" into which it was divided by the assessor, the junction of West Cabanne Place and the respective lots of appellant Vette and defendant Clark abutting the north end.

State ex rel. Koeln v. Imp. Co.

*North Line of Townsend's Subdivision - West Cabanne Place*

*C. M. Clark*

*J. H. Vette*

PARCEL 4

PAR-CEL 5

57 ft. 1 in.

25 ft

17 ft.

148 ft. 6 in.

215 ft.

25 ft

PARCEL 3

230 ft.
230 ft.

N

W — E

S

PARCEL 2

434 ft.
434 ft.

25 ft.

*West Cabanne Place*

PARCEL 1

245 ft.

25 ft.    25 ft.

*North Line of the Clemens Tract*

Appellant, and defendant Emma M. Clark, the owner of the seventeen feet marked on the above plat "C. M. Clark," filed a joint answer, to which plaintiff replied.

The sufficiency of these pleadings to present all questions arising upon the facts is not questioned. All the other defendants made default. All the facts were admitted by stipulation or otherwise at the trial, and are briefly as follows:

In May, 1888, George Townsend, the owner of a strip of land 392 feet and six inches wide extending from Hamilton Avenue on the east to Hodiamont Avenue on the west, a distance of about 1750 feet, platted it by the name of "Townsend's Subdivision of West Cabanne Place." This plat was duly approved by the board of Public Improvements of the City of St. Louis, and recorded. On this plat West Cabanne Court extended north and south through the tract, 50 feet wide. It connected with no public street of the city. From the connection shown in the above sketch a strip sixty feet wide extended east through the middle of the tract 1323 feet to Hamilton Avenue. No other way, either public or private, was shown on the plat except a continuation of Catalpa Street, which extended from a point in the north line of West Cabanne Place to a connection with a public street of the same name at the north line of the tract. These strips were dedicated on the plat as follows: "All said named streets, to-wit: West Cabanne Place, West Cabanne Court and Catalpa street, shown on said plat, are private streets, laid out for the exclusive use and benefit of the parties owning lots in this subdivision." Building lots were laid out on each side of West Cabanne Place and fronting thereon for a distance of more than a thousand feet east of the court, all of which were numbered, and a building line was drawn through each fifty feet from West Cabanne Place upon which they fronted. A row of four lots fronting on the west side of West Cabanne Court throughout its length was also marked with a building line of twenty-five feet. The north fifty-seven feet and one inch of these is the

Vette lot, Mrs. Clark's seventeen feet fronting west at the north end of the court as shown on the above plat.

Shortly after the filing of his plat Townsend, by a printed form of warranty deeds uniform in their terms, conditions and covenants, sold and conveyed all the lots in said subdivision to divers persons, in each case describing the lot as extending to the middle of the contiguous street, upon the express condition therein written that the parts of the lots therein conveyed embraced in a strip half the width of the street should be subject to a right of way for the use and benefit of the owners of the lots in said subdivision, but not for public use. That all of said lands have passed to the present owners, including Vette and Clark by and through similar deeds. The parties stipulate that "each lot owner in Townsend's Subdivision of West Cabanne Place, including the defendants John H. Vette and Emma M. Clark, has a dominant easement of way appertaining to his or her lot in the private streets and ways laid out in said subdivision and known as West Cabanne Place, West Cabanne Court and Catalpa Street, as shown on the plat of said subdivision made by said George Townsend." That part of their respective lots included in West Cabanne Court in front thereof has never been separately assessed, but in the words of the stipulation, the same "has been assessed in connection with and as part of the said parcels of the said John H. Vette and Emma M. Clark, respectively" and they have regularly paid taxes thereon for the years 1909, 1910 and 1911.

On June 5, 1907, nearly all the owners of land in Townsend's Subdivision fronting on West Cabanne Place executed a quit-claim deed to William Yule, purporting to convey all their right, title and interest in West Cabanne Court, with the following explanation: "It is the intention of this instrument to sell, and release all right, title and interest which said parties of the first part have in and to said parcels of land by reason of certain easements mentioned in the plat of said subdivision, recorded in Plat Book 12, page 132, of the Recorder of Deeds'

Office, in the City of St. Louis, and in certain deeds from Townsend to the parties of the first part or their prior grantors, for the purpose of vacating said strip as private streets."

The defendant West Cabanne Improvement Company, is a corporation formed July 5, 1905, the shareholders being all the owners of lots fronting on West Cabanne Place. Yule was its secretary, and took the deed to himself in that capacity.

In October, 1908, that part of the subdivision lying west of the court and south of appellant's lot was replatted by the coporation, extending West Cabanne Place across the court, where it terminated in a circling drive, to which the frontage of all lots, except appellant's, was changed from the court, so that the rear of those which adjoined him were backed against his lot. His only means of egress shown by the record is through the court over the land involved in this suit, to West Cabanne Place, his easement in which would be unavailable otherwise than by passing through the court.

From the judgment of the trial court enforcing the lien of the State against all the defendants, Vette appealed.

I. The judgment from this appeal is taken purports to enforce the lien of the State against the interest of appellant in a strip of land described as West Cabanne Court, except that portion lying in front of his own lot, which is admitted to have been assessed with his lot and the taxes hereon paid by him. His interest is admitted by stipulation to be an easement over this court appertaining to his lot, from which it is the only means of access to the highways of the City of St. Louis, through West Cabanne Place, over which his easement extended.

The parties in interest against the appellant and Mrs. Clark, who is similarly situated, comprise, either openly and in their own names as defendants, or as stockholders of the defendant company, or as signatories of the deed

to defendant Yule, all the owners of lands fronting on the two original thoroughfares.

There is a subtle suggestion in the object sought that gently but persistently agitates the memory of the old story of the king who became obsessed, even to sickness, with the desire to appropriate his neighbor's vineyard for the purpose of converting it into a flower garden to beautify his own grounds. With the same laudable purpose, these men undertook to extinquish the easement of the appellant which he had acquired and paid for in furtherance of an enterprise for the common benefit of all.

It does not appear in the record that, like Ahab, they offered him a better lot, or even its value in money. The law gave them no right to take it without his consent; so they conceived a plan to persuade the State, through its taxing officers, to exercise the most drastic of its constitutional powers in their behalf. They made a deed purporting to quit-claim to Yule, their secretary, the fee in the street covered by appellant's easement, "for the purpose of vacating the strips as private streets." How this was to be done next appears in the proceeding now before us. That Yule took no title other than for the purpose so carefully limited is evident, and is scarcely denied. That the deed bore its intended fruit (not yet ripened) appears from the action of the assessors on which this suit is founded. The completion of the plan is in the hands of this court. If this is a good and valid assessment of the appellant's easement, and the tax thereon has not been paid, it goes smoothly according to the original program; if otherwise, it must fall.

Before considering these questions it is well to say that no question is made that appellant well and faithfully performed all the duties assumed alike by him and all his associates and expressed in their deeds. He has paid his taxes on his interest in the mutual enterprise exactly as his associates who joined in the Yule deed paid theirs. No reason is disclosed by the record why

they should beautify and enhance the value of their
holdings at his expense. So far as this appeal goes, the
rights of the State alone are involved on one side and
the rights of appellant on the other.

II. The Constitution (Sec. 1, Art. 10) has vested the
taxing power in the General Assembly subject to cer-
tain conditions and limitations which it may not trans-
cend. Taxes must be levied and collected
**Taxation for Private Purpose.** by *general laws*, for public purposes *only*,
and must be uniform upon the same class
of subjects (Section 2). Taxing officers are the instru-
ments provided by the Legislature for the sole purpose
of exercising this constitutional power. Their duties
have no connection whatever with the exercise of the
general police powers of the State under the protection
of which private property is accumulated, developed and
enjoyed. Their powers are confined to taxation, and
must be exercised with that impartiality which is in-
cluded in the word "uniform." Partizanship has no
place in the performance of these duties.

In its exercise of the taxing power the Legislature
has been particular in its definition with respect to
property which must contribute to the general burden.
It is expressly declared (R. S. 1909, sec. 11519) that
the term "real property," "real estate," "land" or
"lot" wherever used in the chapter relating to taxation
and revenue "shall be held to mean and include not only
the land itself, whether laid out in town or city lots or
otherwise, with all things contained therein, but also all
buildings, structures and improvements and other per-
manent fixtures, of whatsoever kind thereon  .   .   .
and all rights and privileges belonging or in anywise
pertaining thereto except where the same may be other-
wise denominated by this chapter." This expressly
recognizes to its fullest extent the principle that "actual
value" includes the elements which affect that value,
that is, the price at which it may be bought and sold in
the market.

This statute was before us for construction in Center Building Company v. St. Joseph, 108 Mo. 304. In that case the biennial assessment for State and county taxation for 1888-9 had been made in June, 1887, and the value of the two lots involved fixed at twenty-one thousand dollars. In January, 1889, the lots were assessed for city purposes. A building costing more than fifty thousand dollars had been erected on them, and the assessor valued them at twenty-one thousand dollars, and the building at thirty-five thousand, making a total valuation of fifty-six thousand dollars. The Constitution, (Article 10, section 11) provides that the valuation of property for city taxation shall not exceed its valuation for State and county purposes. A city ordinance provided for the addition of the value of improvements made since the assessment for State and county taxes. Citing the statutory definition of real estate we have already quoted, we held that the city was property enjoined from collecting the city tax on the value of the improvements, and added: "This seems too plain for argument."

The application of the definition to this case seems plainer still. Buildings, structures and permanent fixtures may be removed, and their value or a portion of it be transferred to another tenement, but an easement appurtenent can have no existence other than in connection with the land to which it pertains, nor can its value find other expression than in the value of the dominant tenement which it serves. Its severance destroys its existence. If the value of the servient estate is diminished the State may gain nothing for the purpose of taxation, but in cases like the present the mutual easements are created for the very purpose of increasing the taxable value of the entire tract. It is by such development that a large percentage of the aggregate taxable value of the State is created, and a revenue system which should disregard the permanence and safety of such conditions would be highly detrimental to the interest of the people.

These ·simple principles require no statutory support, and seem to be universally recognized by the courts. The following are a few of the cases by which they are illustrated: Essery v. Bell, 18 Ont. L. R. 76; Matter of Grand Boulevard, 160 App. Div. 80; People ex rel. v. Wells, 139 App. Div. 83; People ex rel. v. Purdy, 143 App. Div. 389, affirmed 202 N. Y. 609; Gas Light Company v. Charter Oak Ins. Co., 51 Iowa, 31; Town of Woodruff Place v. Raschig; 147 Ind. 517; In the Matter of New Avenue, 153 App. Div. 164. It is said in the Grand Boulevard case, supra. that the question has been so' carefully and thoroughly discussed in the case last cited, that it is unnecessary to attempt its rediscussion. Collier v. Western Pav. & Supply Co., 180 Mo. 362, cited by respondent, has no application to the facts of this case.

III.   The views stated in the preceding paragraph lead to the conclusion that the appellant, in paying the tax assessed and charged upon his lot, also paid the **Double Taxation.** tax chargeable upon his easement in West Cabanne Court, and that any attempt to charge a further tax upon that easement by the proceedings to which this suit is an incident is, in law, an attempt to subject it to double taxation, and cannot, therefore, be enforced by the court.   The attempt, by the conveyance to Yule, to hybridize the various interests to produce a taxable entity appealed effectually to the assessor, but in law each seed continued to produce its own kind.   The easement continued to be attached to the tenement in which it was planted, and cannot be uprooted by the court in this suit.   The appellant has been invited by process to assert his claim, and is entitled to a judgment protecting him to the fullest extent of the title under which he holds.

We are not called upon by the record to express any opinion upon the rights as between themselves or against the State, of any of the defendants who have, by their conduct, arrayed themselves as respondents, and therefore refrain from doing so.

It follows that the judgment of the St. Louis Circuit Court must be reversed and the cause remanded to that court for further proceedings in accordance with the views we have expressed. *Railey, C.*, concurs.

PER CURIAM:—The foregoing opinion of Brown, C., is adopted as the opinion of the court; *Blair, P. J., Bond* and *Graves, JJ.*, concur *Woodson, J.*, absent.