89 F.Supp. 852 (1950)
UNITED STATES
v.
11.06 ACRES OF LAND IN CITY OF ST. LOUIS, MO., et al.
No. 5830.
United States District Court, E. D. Missouri, E. D.
March 16, 1950.
*853 Drake Watson, United States Attorney, of New London, Mo., and Charles J. Hughes, Special Assistant to Attorney General, for plaintiff.
Vincent L. Boisaubin, of St. Louis, Mo., for Dr. Julius Jensen as Treasurer and Dr. Julius Jensen and Deborah Jensen individually.
Frank Lee, of St. Louis, Mo., for Dr. John E. Durcan and Dorothy M. Durcan.
*854 Bertha Jay Bremer, of St. Louis, Mo., for Mrs. Cleo Emery, Verbin Gilbert, Katherine Costy and Mrs. Sophia Allen.
Thomas H. Henson, of St. Louis, Mo., for Mrs. Blanch Rieser.
Robert O. McNearney, of St. Louis, Mo., for Mrs. Mamie Garesche.
Hugo M. Walther, of St. Louis, Mo., for Ralph W. and Mary B. Guze and Norman H. Houk.
Claude W. McElwee, of St. Louis, Mo., for Dr. C. and O. L. Johnston and Oveda B. Johnston.
Thomas V. Connelly of St. Louis, Mo., for Anne May Printy.
Albert E. Hausman, of St. Louis, Mo., for Lucy Dobsheutz, Ethel Blase, Arthur F. C. Blase and Gerald Ash.
Stamm, Millar, Neuhoff & Stam, of St. Louis, Mo., for Successor Trustees under will of Charles H. Peck, deceased.
Daniel Bartlett, of St. Louis, Mo., for Trustees under will of Charles W. Scudder.
Malcolm I. Frank, of St. Louis, Mo., for Henry Chouteau, Rine Realty Co. and Grace Wilson Clark.
Henry C. Hughes, of St. Louis, Mo., for St. Louis Union Trust Co., Trustee under will of Lamira W. Kehlor.
HULEN, District Judge.
Plaintiff has taken by condemnation a certain parcel of land in the City of St. Louis which we will refer to as the Eastern half of Vandeventer Place.[1] The question now presented goes to the character of title, or interest, of lot owners in the "Park", streets and sidewalks[2] in the East half of Vandeventer Place and legal interests to be compensated for. Defendants are those who own or may claim an interest in the lots and Park.
Title to fee in the Park and legal interests to be compensated for is determined by construction to be placed on an instrument dated June 18, 1870. Parties of the first part and second part in this instrument were William Vandeventer and others.[3] They held title to the tract now known as Vandeventer Place on June 18, 1870. Parties of the third part in the 1870 instrument were three individuals designated as "trustees".
Based on the 1870 instrument defendants assert conflicting theories to compensation. Some press for compensation for the fee to the Park, claiming ownership therein is in common by 86 owners, and would prorate payment among the 86 lot owners in Vandeventer Place according to frontage on the Park of plot[4] owned by each. Some East-half lot owners reason that each lot owner owns severally a portion of the Park, to be determined by extending the east and west boundaries of each plot to the center of the Park. There is a dispute as to who is entitled to compensation for the easement of use of the Park held by owners of the 86 lots. There are also differences as to whether restrictions had been abandoned prior to the taking by plaintiff with the resultant issue, shall the property be valued for compensation purposes *855 subject to or clear thereof, and is any compensation due for destruction of restriction resulting from the condemnation.
Deposit has been made by plaintiff of estimated compensation due for all property taken. The land was taken as of the 21st day of May, 1948. The next order is the appointment of Commissioners to view the premises and fix the compensation due the land owners. Title and interest condemned must now be fixed, and a judgment entered that is final as provided by Federal Rules of Civil Procedure, rule 54 (b), 28 U.S.C.A., to that feature of the case, not only that the appraisers may be instructed as to basis of determining compensation due defendants, but for use in any subsequent Court proceeding on sole issue of compensation or who may be entitled thereto.
The 1870 instrument was drawn with care. I think an interpretation from "the four corners" (Utter v. Sidman, 170 Mo. 284, 70 S.W. 702, 704) of the instrument evidences plainly the meaning and effect that should be given its terms.
I construe the instrument of June 18, 1870, creating Vandeventer Place to be a trust instrument for a limited period, as far as it may determine any interest in the fee to the Park in the defendants. It is a creative instrument in perpetuity as to restrictions on Vandeventer Place.
The purpose of the instrument, broadly, is to provide for improvement and disposal "of the * * * land [building lots] to the best advantage". The grantors desired to present a fixed and complete plan to prospective purchasers of lots in Vandeventer Place, as to future improvement and operative restrictions. They desired to secure execution of the scheme for improvement and the enforcement of the restrictions immediately upon sale of the first lot and ever after. They endeavored to set up procedure for control of the property for all time, in so far as man may envisage. The instrument delineates how these objectives shall be achieved.
At the outset is a dedication of the Park property  "to the use of the persons who may purchase and improve the lots of ground situated around said parks or places * * * not for * * * public use". The grantors devised to lot purchasers "the use * * * of the parks and places so laid out, upon the terms * * * and subject to the * * * restrictions" set out in the instrument. Since a majority could not function until a majority of the lots were sold, conveyance in trust was made of the Park as a preliminary safeguard, to assure firm establishment of the scheme of improvement. While the initial conveyance contains language denoting a conveyance of some indefeasible interest to the trustees, a later paragraph cuts down the force of such terms as were used. I quote: "But upon trust, nevertheless, for the uses, * * * purposes, and with the powers, and subject to the regulations and restrictions hereinafter expressed". These trust terms, following language of apparent conveyance in fee, take precedence over those prior conflicting provisions.
The provisions of the instrument setting forth the purposes of the trust and duties of the trustees are in no case dependent on the trustees holding the fee. The trustees are to "improve the space" to be used for the Park "in the particulars" set forth in the instrument and "as shall be devised and approved" by the grantors. Three paragraphs follow setting out specific instructions to the trustees for improvements. Next is a paragraph placing power in the trustees to finance execution of their duties, with directions to "permit * * * the * * * owners * * * of * * * eighty-six lots * * * to have free * * * egress to * * * such parks * * * subject always to such * * * regulations as the owners of two thirds in number of all * * * lots * * * shall * * * prescribe; provided * * * in * * * prescribing such rules * * * said owners * * * shall each be entitled to one vote * * * to each lot owned." This is a restraint on management of the property by the trustees.
Authorization for successor trustees in case of resignation or death of any *856 of the three originally appointed is provided. This does not extend the trust beyond the time of death of the last of the three original trustees, but provides a way for three trustees to be in office during the lifetime of the survivor of the three named in the instrument. Finch v. Edwards, Mo. App., 198 S.W.2d 665.
A clause for the appropriation of "a sum equal to one hundred and fifty dollars" from the sale price of each lot, for improving the Park, is evidence of a consideration passing from lot purchasers to the grantors for the fee of that portion of the Park adjoining the respective lots, even though the Park as a whole be burdened with an easement in favor of all lot-owners. Dulce Realty Co. v. Stead Realty Co., 245 Mo. 417, 151 S.W. 415; Neil v. Independent Realty Co., 317 Mo. 1235, 298 S.W. 363.
Then we find four numbered paragraphs giving notice to and made binding on purchasers of lots. First: each lot owner "shall forever hereafter" be "bound * * * for the payment * * * of one * * * eighty-sixth share of all * * * sums of money as * * * parties of the third part [trustees], or the trustees for the time being or such treasurer shall * * * lawfully * * * expend" to execute the powers and duties created by the instrument, with authority to enforce collection by court action. Second: restrictions as to the improvement and use of premises by lot owners. Third: an "easement" in favor of "each * * * of the * * * eighty-six lots of land" is created, to be "enjoyed * * * by the owners". Fourth: Notice to lot owners of the restrictions and covenants imposed and that they shall be "appurtenant" to each lot.
Specific authority is given the trustees "for the time being" to protect the premises and enforce the restrictions imposed by the instrument. Here the trust character of the instrument is emphasized  "And it is further provided, declared * * * that whatsoever trusts are hereby created", as to the powers conferred, the trustees "accept the * * * conveyance and trusts" but, "Further Provided (anything hereinbefore to the contrary notwithstanding)" that "immediately upon the decease of the last survivor of" the named trustees "the trusts aforesaid (as actual trusts) and the legal or equitable estate of the parties of the third part [trustees] * * * shall absolutely cease and determine".
Provision is made for enforcement of the restrictions and maintenance of improvements to Vandeventer Place following termination of the trust created by the 1870 instrument. The lots at that time having in anticipation been sold, the necessity for trustees was past. Thereafter enforcement and up-keep according to the plan was to be carried out "strictly * * * as covenants, * * * restrictions and charges", by "a major part of" the lot owners.[5]

I.
It is my understanding, at common law dedication of land to public use created an easement, the fee not passing from the dedicator. This results from the rule that where land is sold on each side of an established public road, "the fee of the land over which a highway passes is owned equally (to the center of the public road) by the owners of the adjoining ground." See Neil v. Independent Realty Co., supra, 298 S.W. loc. cit. 365.
Looking to statutory law, Section 12809, R.S.1939, Mo.R.S.A., relates to ground dedicated to public use, exclusive of rural roads. This statute provides that dedications for public use are "in like trust and for the uses" named in the instrument of dedication, "and for no other use or purpose." The statute implies a vesting of the fee in the public body having jurisdiction over the public road, and in commenting *857 upon this particular phase of the statute the Court said in Neil v. Independent Realty Co., supra, that the use of the term "fee" in the statute, "while unfortunate," is not harmful because under the terms of the statute there "is not a conveyance in fee simple of the title, but a conveyance in trust for purpose named, and for no other use or purpose." After discussing some of the earlier cases which hold a fee passed by virtue of the public dedication, the Court said: "That they are wrong is clear from the reading of the statutes from 1835 on up, and from the other cases we cite and quote from in this paragraph. Our statutory plats do not vest a fee-simple interest in the city or county. These streets, alleys, and other public grounds are held for the use of the public, and not otherwise. Such plats, in fact, create but an easement, and when vacated the city has no title nor interest, but the land, divested of the easement, reverts to the original owner or his grantees. The easement, or user, may be a little broader and deeper and more firmly fixed by the statute, than it was by the common law (we think not), but it is an easement nevertheless."
Taking the statutory law together with decisional interpretation, we find no significant change has been made in the common law. Section 7317, Mo.R.S.A., declares in effect that regardless of description contained in deeds to land adjoining public streets, when the public use is vacated "all title thereto shall vest in the person owning the property on each side thereof in equal proportions, according to the length or breadth of such ground, as the same may border on such street or alley * * *".
Does the same principle of law which is applicable to the fee in property dedicated to a public use apply to land dedicated to private use, such as private roads, walks and parkways, to be used by a designated group to the exclusion of the public. I find no case exactly analogous to the present one, but in Dulce Realty Co. v. Staed Realty Co., supra, the Court said [245 Mo. 417, 151 S.W. 419]: "It is a well-known rule that, in the absence of evidence to the contrary, it will be presumed that the owners of property abutting on a public way hold the fee to the center of the way. In Holmes v. Bellingham, 7 C.B.N.S. 329, decided by the English Court of Common Pleas in 1859, Chief Justice Cockburn said: `The same principle which applies in the case of a public road, and which is the foundation of the doctrine, seems to me to apply with equal force to the case of a private road. * * *'"
The common law rule that the fee passes from the dedicators to the adjoining lot owners is based on the equitable assumption, stated in Dulce Realty Co. v. Staed Realty Co., supra: "which may be more or less founded in fact, but which at all events has been adopted, that, when the road was originally formed, the proprietors on either side each contributed a portion of his land for the purpose."
Such presumption finds a factual basis in this case. The 1870 instrument provided that $150.00 of the purchase price of each of the 86 lots should be devoted to the Park, either by the grantor or by delivery of such sum by the grantor to the trustees for such purpose. Considering the price for which the lots in Vandeventer Place sold in 1870 and immediately thereafter, the sum set aside from proceeds of sale of each lot for the Park is substantial.
It follows, if the deeds from the grantors to lot purchasers describe only the land to be built on, if such land in fact adjoined the Park tract the conveyances meet the test required for the grantees to acquire title to the fee in the Park. See Stamm Electric Co. v. Hamilton-Brown Shoe Co., 350 Mo. 1178, 171 S.W.2d 580, 146 A.L. R. 917. That all lot descriptions from the grantors did join the Park (or streets) is not disputed.
While the plat filed with the instrument of 1870 and the instrument refer to the ground between private thoroughfares by the name "Park", in view of its size and location I think the term is used synonymously with parkway. Commenting on the relation between a boulevard and a parkway, *858 the Missouri Supreme Court said in Chaplin v. Kansas City, 259 Mo. 479, 168 S.W. 763, loc. cit. 766: "Perhaps it is well enough to say, with reference to the language used to designate these improvements, that we see no difference in their application to such proceedings between a `parkway' and a `boulevard,' except that perhaps one of the features of the former may or may not be omitted in the latter. Webster's International Dictionary defines the former to be `a broad thoroughfare, beautified with trees and turf,' * * *".
It is my conclusion that the fee to the Park remained in the grantors on execution of the 1870 instrument, and on execution of deeds to lot owners they received the fee-simple title to the building site, to a line adjoining the Park; that such lot owners also received the fee to the Park site, burdened with an easement that owners of the other lots had the right to use the Park. Ownership in the Park fee is, as to each lot owner, confined to the land adjacent to their respective lots, the east and west lot lines extending to the middle of the Park proper.
The deed of 1870 at the outset dedicated the park land to the use of the owners of the 86 lots shown in the plat. Then follows a conveyance to the trustees, which conveyance when considered in light of the instrument as a whole amounts to no more nor less than the vesting of an easement in the trustees, with specific restrictions and conditions as to the use and management of the easement, for a prescribed period, to-wit, to terminate on the death of the last trustee. In order for the trustees to carry out the provisions of the 1870 instrument title as trustees to an easement was all that was necessary. Viewing the instrument as a whole an intention on the part of the grantors to convey fee to the trustees does not appear. No provision is made for vesting such interest on the death of the last trustee. The intention of the grantors is plain to me when the instrument is construed as conveying an easement in trust. Lodgment of the easement conveyed in trust, following death of the last trustee, is evident by the extent of control accorded to the lot owners on termination of the trust.
It is suggested by brief filed by plaintiff that the 1870 instrument conveys a fee to the trustees, but because the trust ceases by its own terms on death of the last trustee the legal title in the trustees is divested out of them and passes to the cestuis que trust, and (65 Corpus Juris 362, Par. 137, 26 R.C.L. 1210, Par. 52; Section 3493, R.S.Mo.1939, Mo.R.S.A.) that the entire beneficial interest was conveyed to the eighty-six lot owners and they are the cestuis que trust with the result, after the death of the last surviving trustee the trust ceased to exist and the owners of the eighty-six lots became vested with the legal estate as well as the equitable estate, subject to the easement of each individual lot owner. Also it is urged that when a trust fails, as it does under the 1870 instrument on death of the last trustee, the fee results or reverts to the grantor. This argument leads to the same conclusion we reach but by a different route.
We agree with plaintiff the lots are the dominant estate, the "Park" is the servient and has no beneficial existence other than in connection with the adjoining lots to which it pertains. Its value can find no other expression than in the value of the dominant estate which it served. It has no market value except for use in connection with the adjacent lots. State ex rel. Koeln v. West Cabanne Improvement Company, 278 Mo. 310, 213 S.W. 25. The "Park" is appurtenant to the lots. 6 Corpus Juris Secundum 136; Peter v. Worth, 164 Mo. 431, 64 S.W. 490.

II.
The lot owners of Vandeventer Place on the day of taking by plaintiff had title jointly to an easement in the Park. The part of that easement represented by the East half of Vandeventer Place was taken by the plaintiff in this proceeding. It is a compensatory interest in property. The owners of the 86 lots in Vandeventer Place are entitled to be compensated for the easement taken.
*859 In fixing the compensation due to the lot owners in the East half of Vandeventer Place for the land upon which improvements were authorized to be erected by them, such value will be fixed as including the easement which the owner had in the Park that is the right of use of and to the whole of the "Park".
The lot owners in the West half of Vandeventer Place are entitled to be compensated for destruction or loss of the easement over the East half of the "Park".

III.
Certain defendants by pleading have raised the issue that before the date of taking the restrictions had been abandoned, and the property should be valued on a nonrestricted basis. Other defendants insist they were in force. After notice a hearing was conducted on this issue. As a matter of law I cannot say the property would have the same value whether or not subject to the restrictions. From the attitude of defendants we assume it would raise the value of some lots and lower the value of other lots.
Evidence offered at the hearing on abandonment of restrictions was of a nature that left doubt as to extent of knowledge of all lot owners that restrictions were being violated. This would apply to renting of rooms or occupancy by more than one family, in one or more of the dwellings; use of one dwelling by the owner as an art studio where clients had their photos painted for a money consideration; another house was used by a sculptor to carry on his art; one house was the registered residence of a real estate corporation; from another a real estate business was conducted. There was no visible evidence generally of these activities, chargeable to all residents of Vandeventer Place. The witness who complained about one of the real estate enterprises admitted she lived next door to the registered address and first learned of it many years after the registration from the postman who was making inquiry to make mail delivery. There was evidence that one householder kept chickens and other animals. This was stopped as a result of enforcement of the restrictions. In one garage a welding shop was started. In another an amateur theatrical group lived. Both were dispossessed on complaint the restrictions were being violated. This character of evidence, as well as change in neighborhood, while differing in degree does not add substantially to the case made on the same issue in 1926, when the Supreme Court of Missouri affirmed the decree of the Circuit Court that the restrictions had not been abandoned. See Pierce v. St. Louis Union Trust Co., 311 Mo. 262, 278 S.W. 398. One new and independent fact does appear in the record. A garage has been built on one lot "not faced toward the alley" as required by the building restrictions in the 1870 instrument. The record does not show when it was built. All lot owners can be charged with knowledge of this fact. We cannot believe this is such a violation of restrictions as to constitute abandonment of restrictions. As late as 1944 a temporary injunction was issued, still in force, against certain lot owners restraining violation of restrictions.
No purpose will be served by a further discussion of the evidence on this issue. Even if I were of the opinion that the restrictions had been abandoned, which I am not, it would serve no purpose on the question of instruction to the Commissioners as I view the issue.
The compensation to which the property owners are entitled is the fair cash market value of the property taken as of the day of taking, May 21st 1948. That is, what a buyer would give who was willing to purchase but did not have to purchase, and what a seller would take who was willing to sell but did not have to sell, as of May 21, 1948. Any effect on value due to the announced intent to condemn by the Government is not an element of compensation.
In May, 1948, there was the decision in the Pierce case, and the temporary injunction, as the last word on validity of the restrictions. There was pending a temporary injunction in the Circuit Court of St. Louis against restriction violation. There was an *860 assessment voted in 1948 under the restrictive covenants. There was a constant effort of some of the property owners, up to and including May, 1948, to enforce the restrictions. There was substantial enforcement and attempt to enforce the restrictions.
Under these circumstances can there be any doubt that a purchaser of Vandeventer lots in May, 1948, could do so with the belief, based on reason, that he was doing so free of restrictions. A witness in favor of abandonment testified on the subject. She said she could not sell her property with the restrictions on it. Others said they would profit by such a holding now by this Court. Another admitted that in making two purchases in recent years he had done so with notice of the restrictions.
To predetermine judicially at this date that there was an abandonment of restrictions as of May, 1948, would be to force a situation for fixing values not in being in May, 1948, and one that could not have been the basis for negotiating a sale as of that date. We find only one case where the question has even been raised. In Re Roosevelt Ave., in City of New York, 188 App.Div. 106, 176 N.Y.S. 374, the Court held that Commissioners appointed to assess damages should consider the situation as it existed, without attempting to predetermine if restrictive covenants would be enforced by a court of equity.
We conclude there has been a progressive, normal and natural deterioration of the improvements in the Place and the environs, but it still retained, as of May, 1948, substantially its essential character and the restrictions were of substantial value.
I conclude the circumstances and conditions affecting value and sale as of May, 1948, should not be disturbed by a judgment that could not have been foreseen as the basis of fixing a fair market price in May, 1948.
To the extent that any pleading constitutes a motion or presents an issue, seeking instructions to the appraisers to appraise and fix values on the basis of abandonment of restrictions in Vandeventer Place, same are overruled.

IV.
This leaves for determination the claim of lot owners in the West half of Vandeventer Place to compensation for destruction of the restrictions. Vandeventer Place as circumscribed by restrictive covenants in the 1870 instrument could not continue to function as a Place as of the day of taking one-half of Vandeventer Place by plaintiff. Condemnation of the property in the East half of Vandeventer Place and its use by plaintiff as a hospital is a violation of the restrictions and makes impossible operation of the remainder of Vandeventer Place for the purposes and as required in the 1870 instrument. Lot owners were liable for a specific proportion of the total assessments. One eighty-sixth only can be charged against the owner of each lot. Since the taking only one-half of the assessments can be collected. Operating through a treasurer for collection and expenditure of assessments since death of the last trustee may or may not have been satisfactory to all property owners but continuation of such management is impossible since May, 1948, because under the 1870 instrument "covenants, conditions, restrictions and charges" are to be made by "a major part of the lot owners." No longer is it possible for a major part of the lot owners to act. A major part of lot owners, as qualified by the 1870 instrument, no longer exists, due directly to plaintiff condemning and taking the East half of the Place. Lot owners in the West half of the Place are entitled to be compensated for such sum, if any, as destruction of the restrictive covenants of the 1870 instrument, in May, 1948, decreased the market value of their plots.

Conclusion
The damages sustained by defendants resulting from the land acquired by plaintiff in this condemnation suit will be fixed as to each (ownership) tract, whether represented by one or more owners. Compensation is to be fixed regardless of ownership. *861 The Commissioners will assess the damages in one lump sum as to each parcel. The Court will determine ownership of each such parcel where any conflict in claim to compensation may appear. Butler County Railroad Company v. Barron, 173 Mo. 365, 158 S.W. 872.
A. (1) The tract owners in the East half of Vandeventer Place whose building sites have been taken are entitled to compensation for their property as of the time of taking, May 21, 1948, such value to be fixed as to each tract on a basis that the owner(s) of such tract owns the fee-simple title to the Park line and that as owner of such tract has an easement consisting of the right to use the Park as a whole for the purposes for which it was dedicated, such right carrying with it the obligation to pay one eighty-sixth per lot of the total assessment made for support and maintenance of the Park and a like one eighty-sixth per lot of the taxes levied against the Park.
A. (2) Also in fixing compensation due the tract owners in the East half there shall, in addition, be awarded such sum as the value may be according to law, at the time of taking, of the fee burdened with an easement, of that part of the Park represented by extending the east and west lot or tract lines to the center of the Park; the easement just referred to being the right of all of the owners of the 86 lots to use that part of the Park just described together with the remainder of the Park for the purposes designated in the instrument of 1870.
B. (1) The lot owners in the West half of Vandeventer Place whose building lots have not been taken by plaintiff are entitled to be compensated for the easement owned by them in the East half of Vandeventer Place Park and taken by plaintiff, that is the right to use the East half of the Park for the purposes specified in the instrument of 1870, and in fixing the value of such easement the value shall be determined, as an easement subject to the liability of each lot (owner) to pay one eighty-sixth of assessments levied for the maintenance of the Park and taxes levied against the land in the Park as a whole.
B. (2) Such lot owners are also entitled to be paid for the reduction, if any, as of May, 1948, in the market value of their premises resulting from destruction or cancellation of the restrictive covenants on the Place as set forth in the 1870 deed.
C. Compensation due the lot owners referred to in preceding paragraphs A and B shall be in one lump sum with respect to each lot or plot.
D. Compensation due the lot owners referred to in preceding paragraph B for value of easement (B(1)) may be fixed by determining the value of the individual parcel of ground upon which improvements are, were, or could have been placed before loss of easement in the East half of the Park in May, 1948, and the value immediately after loss of easement; and compensation due such owners, if any, resulting, as set out in Parfagraph B, from loss or destruction of the restrictive covenants referred to (B(2)) may be fixed by determining the value of the tract subject to improvement by the owner before the destruction or loss of the restrictive covenants in May, 1948, and the value immediately thereafter, if there by any lowering of value of the tract subject to improvements as the result of the loss or destruction of the restrictive covenants. Any loss by virtue of lowering in value referred to under Paragraph B(1) shall be added to the loss, if any, referred to under Paragraph B(2) and the combined loss will represent the compensation due such lot or plot owner(s). Benefits, if any, resulting from destruction of restrictive covenants will be determined in like manner and accounted for in compensation found due.
E. Values shall be fixed as of the day of taking, May 21, 1948, with the property subject to restrictions and conditions as set forth in the instrument of 1870, but under conditions prevailing as of May, 1948.
Judgment in accord herewith may be submitted, also instructions to and Order for appointment of Commissioners to fix compensation.
NOTES
[1] Vandeventer Place was created June 24, 1870. It is a tract approximately 2185 feet east and west by 420 feet north and south. The tract is divided in the center by a street running north and south. Running east and west down the center of the tract is a "Park", fifty feet wide, which runs approximately the length of the tract on each side of the north and south divisional street. There are forty-three building lots on each side, all facing on the "Park". Between the Park and the building lots on each side is a thirty-foot traffic-way called North and South Vandeventer Place, respectively. Between the traffic way and the lots is a twelve-foot strip for sidewalk. The lots are approximately one-hundred and forty-five feet deep, north and south, and vary in width from forty-five feet to sixty feet. The east end of the tract joins Grand Avenue, a public street; the west end joins Vandeventer Avenue, a public street.
[2] Title to the "Park, streets and side-walks" turning on a common question, they will hereafter be identified by the term "Park".
[3] Whom we will refer to as grantors.
[4] We use the term "plot" rather than "lot" because in many cases fractions of lots are owned along with an adjoining lot.
[5] A treasurer is here mentioned. No conveyance of any character is made to the treasurer. His power is only to collect assessments and to "use and apply the money so collected * * * first * * * to satisfy * * * taxes * * and * * * next * * * to keep" the Place in good repair and to use any surplus for beautifying purposes as a "major part" of the lot owners "shall authorize and direct".